MAURICE J. PATTEN D/B/A WARSAW MONUMENT WORKS *v.*
RICHARD SMITH D/B/A SMITH MEMORIAL COMPANY.

[No. 3-1074A179. Filed February 24, 1977. Rehearing denied April 12,
1977. Transfer denied August 14, 1978.]

*Jere L. Humphrey, Chipman, Morrison & Humphrey,* of
Plymouth, for appellant.

*Peter L. Rockaway, Kizer, Neu, Joyce & Rockaway,* of
Plymouth, for appellee.

STATON, P.J.—This is an appeal from a judgment on a verdict awarding to Richard Smith $12,350.00 actual damages and $30,300.00 punitive damages in a defamation suit against Maurice J. Patten in the Marshall Circuit Court, Marshall County, Indiana on May 23, 1974.

The basis of liability for this dafamation suit arises out of the mailing of a brochure by Maurice J. Patten entitled "Never Let This Happen in Your Community". The mailing was admitted by Patten, and occurred in late 1972, or early 1973.

Richard Smith, a Plymouth resident, caused to be built a 72 crypt, 32 niche mausoleum at Oak Hill Cemetery, a public cemetery in Plymouth, Indiana. The structure itself was completed after the mailing of the brochure.

Mr. Smith began his new venture by attending Plymouth City Council meetings and discussing his project with the Council. Somewhat later, the Council passed an Ordinance which stipulated that the construction of mausoleum was in the best interests of the city. The city, as a part of the overall plan, entered into a lease agreement which placed upon the city the obligations of maintenance and entombment. Additionally, the mausoleum was built on city land with the city paying the expense of paving the road to the mausoleum.

Mr. Smith began his advertising campaign in February, 1972 by running an advertisement in the *Plymouth Pilot*. The brochure was mailed sometime around the end of 1972 or beginning of 1973 through the Warsaw, Indiana branch office of Mr. Patten d/b/a Warsaw Monument Works. Approximately 1500 or 2000 brochures were mailed to Plymouth residents whose addresses were selected at random from the Plymouth telephone directly.

Mr. Patten obtained the brochure from Mr. John Dianis, executive secretary of Monument Builders of North America, the trade association of monument builders.

The brochure contained a compilation of newspaper articles and photographs of defective mausoleums, together with a cartoon. The cartoon contained both admonitions and advice. The brochure was compiled by Monument Builders of North America with the clippings being obtained through a clipping service. The brochure cautioned the buying public to:

"Look out for the slick salesman who advertises that there has been a demand for a public mausoleum in your community.

1.  Who demands it, the community or the promoters?

2.  How much profit will the promoters take out of your community?

3.  Why buy before the building is completed or before you can see what you are getting?

4.  If the building is substantial, why don't the promoters complete it with their own capital instead of yours?

5.  Are the crypts double sealed?

6.  Have adequate provisions been made for the drainage of moisture and ventilation to remove odors?

7.  How much will be set aside for the Perpetual Care Fund and where will the fund be deposited?

8.  Will the interest on the Perpetual Care Fund keep the building in repair for eternity?

9.  Who will remove the bodies of your loved ones from the mausoleum if it starts to deteriorate and fall apart?

Have your lawyer INVESTIGATE before you INVEST. It may save you money."

Before the mailing of the brochure, Mr. Smith had been unopposed in the presentation of his project to the community.

The issues presented for review by this appeal are:

(1) Did the trial court err in refusing to give Patten's tendered final instruction number 8?

(2) Did the court err in giving, over Patten's objection, Smith's final instruction number 3?

After reviewing the record in this appeal, we conclude that the trial court erred, and we reverse.

The law of libel and slander recognizes two classes of privileged communication, absolute and qualified. *Prosser, Law of Torts,* 4th Ed. at pp. 776-796. The dissemination of news by the communications media has traditionally been safeguarded by two qualified or conditional privileges which may be pleaded as affirmative defenses in a libel action:

(1) The privilege of "fair comment" (limited to opinions on public officials and their conduct—not applicable to private individuals or newsworthy events) and

(2) The privilege attached to the reporting of public proceedings.

*Prosser, supra,* at p. 792. This law of qualified privilege for media expression was brought into the realm of emerging First Amendment doctrine in the landmark case of *New York Times Co.* v. *Sullivan* (1964), 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686. The *Sullivan* Court held that a publisher who discusses public questions is engaged in an activity protected by the First Amendment. 376 U.S. at 282, 84 S.Ct. 727. It further held that the First and Fourteenth Amendments forbade "a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proved that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." 376 U.S. at 279-280, 84 S.Ct. at 726. This standard was expanded in subsequent decisions to cover matters of public interest concerning "public figures." *Curtis Publishing Co.* v. *Butts* (1967), 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094, and finally to include recovery by "private individuals" involved in matters of public interest. *Rosenbloom* v. *Metromedia, Inc.* (1971), 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296.

Recently the individual states have been given the option of defining their own standards of constitutional privilege for the defamation of private individuals, as long as they do not impose liability without fault (i.e., libel *per se*). *Gertz* v. *Robert Welch, Inc.* (1974), 418 U.S. 323, 347, 94 S.Ct. 2997, 3010, 41 L.Ed.2d 789, 809. This definitional option may either coincide with the *Rosenbloom* "actual malice" standard or with *Gertz'* "simple negligence" standard. Damages under the "simple negligence" standard are limited to actual damages. Presumed or general damages to the reputation of public officials or public figures would continue to be

contingent upon proof of "actual malice" under the *New York Times* privilege standard. *Gertz* v. *Robert Welch, Inc., supra,* 418 U.S. at 349, 94 S.Ct. 3011.

In *Aafco Heating & Air Conditioning Co.* v. *Northwest Publications, Inc.* (1974), 162 Ind. App. 671, 321 N.E.2d 580, we rejected the *Gertz* opinion in favor of upholding the standard enunciated in *New York Times* and in *Rosenbloom. Aafco* "requires a private individual who brings a libel action involving an event of general or public interest to prove that the defamatory falsehood was published with knowledge of its falsity or with reckless disregard of whether it was false." 321 N.E.2d at 586. This test governs our disposition of the issues discussed below.

## I.

### Reckless Disregard

The trial court adopted and read to the jury the following instruction:

> "You are instructed that the mausoleum constructed by the plaintiff Richard Smith at the Oak Hill Cemetery under an ordinance of the City of Plymouth is of public interest and therefore anyone is entitled to make fair comment thereon and such comments are qualifiedly privileged by law. By the term qualifiedly privileged I mean that the plaintiff Richard Smith cannot recover actual or punitive damages unless he proves by evidence of convincing clarity that there was actual malice by the defendant Maurice Patten." *Defendant's Instruction Number 5.*

Actual malice was defined by the court as being:

> "[W]ith knowledge of its falsity or with reckless disregard as to whether it was false. . . ." *Defendant's Final Instruction Number 6.*

Patten contends that it was error for the court to refuse to give his instruction defining reckless disregard.

Patten's tendered instruction number 8, which was rejected by the trial court, reads as follows:

> "I instruct you that to establish that the defendant, Maurice Patten, or the defendants published the pamphlets with

reckless disregard, the plaintiff, Richard Smith, must show by clear and convincing evidence that the defendant, Maurice Patten, in fact entertained serious doubts as to the truth of his publication. If you find from the evidence that Maurice Patten had reason to believe the truth of the matters contained in such pamphlet the fact that he did not verify the truth of the statements contained therein does not constitute reckless disregard."

This instruction was taken from *St. Amant* v. *Thompson* (1968), 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262, whose formulation of the malice test provides trial courts with a relatively clear guidance. The *St. Amant* Court held that reckless conduct was not measured by whether a reasonably prudent man would have published or would have investigated before publishing; rather, the evidence must show that a reasonable person would entertain serious doubts as to the truth of the statement.

In *Aafco Heating,* we noted that:

". . . [P]ublisher knowledge of serious factual inconsistencies—facts which negate or materially contradict the impression conveyed by the published statements to some significant extent—would be highly probative evidence of awareness of probable falsity. The publisher's failure to employ any reliable investigatory methods or lack of any effort to independently verify disputed or questionable factual assertions would also be relevant to the issue of reckless disregard for the falsity of published statements. . . ." [Citation omitted.]. 321 N.E.2d at 589.

Patten was entitled to have his instruction given on the definition of reckless disregard because it was clearly an issue in the case: Patten had secured the pamphlet from Monument Builders of North America and did not verify the accuracy of the articles therein, either absolutely or as they applied to Smith's project.

Moreover, the term "reckless disregard" is a legal term which must be defined for the jury:

". . . The general rule seems to be that it is error for a court to refuse to define in its instructions technical or legal phrases in connection with material issues, when prop-

erly and timely requested so to do. . . ." *Gwinn* v. *Hobbs* (1917), 72 Ind. App. 439, 462, 118 N.E. 155, 162.

The term "reckless disregard" is of especial significance in a libel action and must be given legal definition by the trial court.

## II.

### Malice

The trial court instructed the jury as to the following definition of malice:

"Malice is the doing of a wrongful act intentionally without just cause or excuse." *Plaintiff's Instruction Number 9.*

Patten maintains that while an exact quote from Black's Law Dictionary, this definition is not proper when applied in a libel action.

The distinction between the *New York Times'* standard of knowledge of falsity or reckless disregard of the truth and "actual malice" in the traditional sense of ill will was brought out in *Beckley Newspapers Corp.* v. *Hanks* (1967), 389 U.S. 81, 88 S.Ct. 197, 19 L.Ed.2d 248. There the jury was instructed in part that it could find for the respondent if it were shown that petitioner had published the editorials "with bad or corrupt motive," or "from personal spite, ill will or a desire to injure plaintiff." This instruction, which is synonymous with the one given in this case, was determined to be "clearly impermissible" because it erroneously interpreted the *New York Times* standard. *Beckley Newspapers* v. *Hanks, supra,* 389 U.S. at 82, 88 S.Ct. 198. The difficulty engendered by this trial court's definition is similar to the one found by the Supreme Court in *Henry* v. *Collins* (1965), 380 U.S. 356, 85 S.Ct. 992, 13 L.Ed.2d 892, when in a *per curiam* opinion it reversed a judgment on a verdict for plaintiff in a libel action because:

"The jury might well have understood these instructions to allow recovery on a showing of intent to inflict harm, rather than intent to inflict harm through falsehood . . ."

Malice is a term of art in a case involving qualified privilege:

"The rule seems to be that when the comment upon which the action is based is one of qualified privilege, then the question is not whether the charge is true or false, but only whether the privilege has been abused to the extent that there exists actual malice or an utterance with knowledge of its falsity, or a complete and utter disregard for its truth or falseness." *Evans* v. *Larson* (W. Virg. 1972), 351 F.Supp. 279, 285.

Thus, the trial court's instruction on malice is incorrect for a libel action.

The trial court's refusal to adopt Patten's tendered instruction defining reckless disregard and its rendition to the jury of an erroneous definition of malice constitutes reversible error. The judgment of the trial court is reversed, and the trial court is instructed to grant Patten a new trial.

Garrard, J., concurs in result with opinion; Hoffman, J., concurs in opinion of Garrard, J.

### Opinion Concurring in Result

Garrard, J.—I adhere to my dissent in *Aafco Heating & Air Conditioning Co.* v. *Northwest Pub. Inc.* (1974), 162 Ind. App. 671, 321 N.E.2d 580, and reiterate that actual damages should be allowed for the *negligent* publication of a defamatory falsehood involving a private individual who is neither a public official nor a public figure. However, even under the majority holding in *Aafco,* reversal should not be predicated upon the instructions relied upon in the majority opinion.

Assuming appellant Patten was entitled to the qualified privilege described in *Aafco,* the majority correctly observes that the court should have defined for the jury "reckless disregard." However, the issue presented by the appeal is whether the court erred in refusing defendant's Instruction 8, set forth *supra* at 304. For the court's action to constitute reversible error, the tendered instruction must have been a correct statement of the law. *See, e.g., Mosier* v. *Stoll* (1889),

119 Ind. 244, 20 N.E. 752; *Indianapolis Transit System, Inc.* v. *Williams* (1971), 148 Ind. App. 649, 269 N.E.2d 543; *NIPSCO* v. *Otis* (1969), 145 Ind. App. 159, 250 N.E.2d 378.

While the Court in *St. Amant* v. *Thompson* (1968), 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262, recognized that reckless conduct would be shown where the defendant in fact entertained serious doubts as to the truth of his publication, the Court also stated,

> " 'Reckless disregard,' it is true, cannot be fully encompassed in one infallible definition. Inevitably its outer limits will be marked out through case-by-case adjudication. . . ." 390 U.S. 730, 88 S.Ct. 1325, 20 L.Ed.2d 267.

This case represents one such variation. The essence of Smith's claim was not that the matters reproduced in the montage were false and libelous per se. It was rather that they created a libelous innuendo that all mausoleums, or at least the one proposed by Smith, would be similarly defective. Thus regardless of the truth of the items contained in the publication, the jury could properly have found Patten published with "constitutional malice" if he entertained serious doubts that Smith's mausoleum would be subject to the defects described.[1]

Defendant's tendered Instruction 8 restricted the jury to considering whether the defendant entertained serious doubts as to the truth of the matters *contained in the pamphlet*. As such, it was misleading and an incorrect statement of the law. The court properly refused the instruction. (Upon the same basis the court properly refused defendant's tendered Instruction 3 which instructed the jury that truth is a

---

1. In my own view a defamation by this kind of innuendo underscores the problem created by the majority opinion in *Aafco* since it rewards the publisher for making no reasonable inquiry to ascertain whether his target is a proper subject for condemnation. *Compare, e.g.,* the National Labor Relations Board's opinion in *Plochman & Harrison—Cherry Lane Foods, Inc.* (1962), 140 N.L.R.B. — (#11), 51 L.R.R.M. 1558, holding that an allegedly accurate film dramatization of a violent strike so effectively tarred and feathered the labor movement that its showing to employees prior to the conduct of a representation election would per se require that the election be set aside.

defense and if the statements in the pamphlet were true their verdict would be for the defendant.)

I agree that plaintiff's Instruction 9 which was given by the court inadequately defined malice. However, the instruction did not mandate a finding and when considered with the other instructions given, especially defendant's Instruction 6, which is quoted in the majority opinion, I find the jury was adequately instructed.

The defendant, however, also asserted error in an instruction which advised the jury that the defendant had the burden of proving a qualified privilege and then stated,

"You are instructed, however, that false statements of facts disparaging the quality of a competitor's goods or the conduct of his business, are regarded as unfair methods of competition, and are never privileged."

Even in the absence of the qualified constitutional privilege adopted by the Aafco majority, this language would require reversal in this case. The instruction was erroneous and prejudicial because the qualified privilege (whether reckless disregard or negligence) would attend the communication even if the tort in question were labeled interference with commercial or economic relations rather than libel in its historical sense.[2]

I therefore concur that the judgment must be reversed.

NOTE.—Reported at 360 N.E.2d 233.

---

2. Several writers make this distinction. See, e.g., Prosser, Law of Torts (4th Ed.) Section 128, citing sources and pp. 924, 925 recognizing the availability of qualified privileges.