Thomas BUTLER, Jr., on behalf of the ESTATE OF Thomas BUTLER, Sr., and the Estate of Alice J. Butler, Appellants–Plaintiffs,

v.

KOKOMO REHABILITATION HOSPITAL, INC., Kokomo Rehabilitation Hospital, L.P., and Continental Medical Systems, Inc., Appellees–Defendants.

No. 25A03–0010–CV–349.

Court of Appeals of Indiana.

March 21, 2001.

Karen L. Hughes, C. Richard Oren, Rochester, IN, Attorneys for Appellants.

L. Alan Whaley, Michael A. Wilkins, Molly J. Cue, Sean Devenney, Ice Miller, Indianapolis, IN, Attorneys for Appellees.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellants–Plaintiffs, Thomas Butler, Jr., on behalf of the Estate of Thomas Butler, Sr., and the Estate of Alice J. Butler (hereinafter collectively referred to as "the Butlers"), appeal the trial court's grant of Appellees–Defendants', Kokomo Rehabilitation Hospital, Inc., Kokomo Rehabilitation Hospital, L.P., and Continental Medical Systems, Inc., (hereinafter collectively referred to as "Defendants"), motion for a definitive ruling that foreclosed any claims against the Defendants based on any alleged negligence of Dr. Lester as treating physician. The Butlers also appeal the trial court's denial of their motion for partial summary judgment on the issue of liability against Defendants.

We affirm.[1]

### ISSUES

The Butlers raise three issues on appeal, which we restate as follows:

1. Whether the trial court erred in granting the Defendants' motion for a definitive ruling that foreclosed any claim against the Defendants based on any alleged negligence of Dr. Lester as treating physician.

2. Whether the Defendants are directly liable for care and treatment provided to Alice Butler while she was hospitalized.

3. Whether the Defendants are vicariously liable for the care and treatment provided to Alice Butler while she was hospitalized.

### FACTS AND PROCEDURAL HISTORY

In March 1990, Alice Butler underwent cardiac catheterization under the care of Dr. Jenkins, M.D., an adult cardiologist. Because of the results of the catheterization, mitral valve replacement surgery was performed on March 9, 1990. A prosthetic valve was placed in Alice. Placement of the prosthetic valve required that Alice be placed on Coumadin therapy to thin her blood and prevent formation of clots on the valve which could break loose and lead to a stroke. Dr. Jenkins prescribed the Coumadin therapy and treated Alice until she was stabilized.

Alice continued to receive the Coumadin therapy under the care of her family physician, Dr. Sitjar. In 1992, Alice had colon-rectal surgery to remove a tumor. In order to perform the surgery, it was necessary to stop the Coumadin therapy so as to avoid uncontrolled hemorrhaging during the operation. After the surgery, Alice suffered a stroke.

Dr. Sitjar recommended to Alice and her family that she receive rehabilitation from Kokomo Rehabilitation Hospital (KRH) following her stroke. According to the Butlers, Dr. Sitjar recommended KRH because of its reputation in the healthcare community as a rehabilitation hospital. He did not recommend a specific physician.

Based upon Dr. Sitjar's recommendation and their own research, Alice and her family chose to apply for admission to KRH. A pre-admission and screening assessment evaluation was prepared for Alice and then returned to the admissions department of KRH. Her admission was approved by Dr. Lester, M.D., Medical Director of KRH. Dr. Lester was assigned by a rotation process at KRH to be the attending physician of Alice while she was a patient at KRH.

Because of her condition at the time, Alice's husband, Thomas, signed the consent to admission and treatment form. This form stated as follows:

1. I, (or Thomas Butler on behalf of) Alice Butler knowing that I (for the patient) am (is) suffering from a condition requiring the care of this Facility do hereby voluntarily consent to the rendering to such care, which may include but is not limited to routine diagnostic procedures and such medical treatment

---

1. Oral argument was held in this case on February 27, 2001, in Indianapolis, Indiana.

as the named attending physician(s), his assistants or his designees or others of the Facility's medical staff consider to be necessary.

2. I understand that the practice of medicine is NOT an exact science and the diagnosis and treatment may involve risks of injury or even death. I acknowledge that no guarantees have been, or can be, made to me as to the result of treatments or examination in the Facility.

3. I understand that:

A. It is customary, absent emergency or extraordinary circumstances, that no substantial and significant procedures are performed upon a patient unless and until the patient has had an opportunity to discuss them with the physician or other health professional to the patient's satisfaction;

B. I will be informed of the risks connected with a particular procedure or treatment [which a competent physician in similar circumstances would reasonably disclose (KS, CO, FL) and which would provide a reasonable individual with a general understanding of the procedure or treatment, possible alternative procedures and treatments and substantial risks inherent in the proposed procedure or treatment (FL) [which a patient in my circumstances would consider relevant in making a decision concerning whether to undergo the treatment or procedure (LS) ].

C. Each patient has the right to consent, or to refuse consent, to any proposed procedure or therapeutic course;

D. No patient will be involved in any research or experimental procedure without the patient's full knowledge and consent; and

E. From time to time, it is important to photograph, videotape or mechanically record patient's particular surgical procedure or treatment for the advancement of medical care and education, and that reasonable efforts will be made to keep all materials confidential if such recordings of my (the patient's) procedure or treatment are made.

4. I understand that many of the physicians, including my attending physician(s), are not employees or agents of the Facility, but rather are independent contractors who have been granted the privilege of using its facilities for the care and treatment of their patients. Further, I understand that among those attend patients at this Facility are medical, nursing and other health care personnel in training who, unless requested otherwise, may be present during patient care as a part of their education.

5. I authorize the Facility to release medical information concerning my admission as may be requested by third party payors in order to process payment of my claims.

6. I understand that the Facility does not assume responsibility for loss and/or breakage of dentures or dental bridges, jewelry, moneys, radios, or any other personal items brought to the Facility unless such items are delivered to and accepted by the Facility and a Personal Property Form listing such items is jointly signed by the Facility, the patient, and/or the patient's Responsible Person.

7. I acknowledge that I have received a copy of the Facility's Patients' Rights Policy.

8. This form has been fully explained to me, and I certify and acknowledge that I understand its contents, and agree to accept its contents and significance.

(R. 542).

During her stay at KRH, Dr. Lester, as treating physician, oversaw Alice's rehabilitation and ordered diagnostic and treatment measures, such as blood tests and medication. The medicines that Dr. Lester ordered and adjusted from time to time included Coumadin. On July 29, 1992, while an inpatient at KRH, Alice suffered a second stroke, causing her to lapse into a

coma for approximately three years, after which she passed away. The Butlers allege that because Alice's Coumadin therapy was adjusted and not maintained at a therapeutic level, it was more probable than not that this led to her second stroke.

Consequently, on July 23, 1993, a proposed complaint was filed with the Indiana Department of Insurance alleging that Dr. Lester and other physicians who were qualified healthcare providers were liable for the damage sustained by Alice as a result of the stroke.

On June 13, 1994, the Butlers filed a complaint against the Defendants in the Fulton Superior Court, asserting a claim for damages suffered by Alice while she was hospitalized at KRH. In paragraph 14 of their complaint, the Butlers specifically alleged that:

> Alice Butler's cerebral vascular accident of July 29, 1992, and subsequent vegetative state are the direct result of acts of negligence committed by Dr. William Lester: (a) Failure to provide proper continuity of care with regard to the Plaintiff, Alice Butler; (b) Failure to maintain therapeutic dosages of required medication; (c) Failure to properly monitor the Prothrombin time of the blood of the Plaintiff, Alice J. Butler; (d) Failure to take a proper medical history upon admission of the Plaintiff to his care; (e) Failure to seek consultation with an appropriate specialist for the care and treatment of Alice J. Butler; (f) Any other act of negligence which may be discovered during the preparation for trial in this case.

(Supplemental Record (S.R.) 18).

On April 26, 1996, the Butlers entered into a settlement agreement with Dr. Lester and his insurer on the proposed complaint. In pertinent part the agreement stated:

> Claimant hereby covenants and agrees not to initiate or pursue any additional claim or lawsuit or to take any action to collect any additional sums from Lester or Med.Pro [Dr. Lester's insurer], by reason of the medical care furnished to Alice J. Butler, except for Claimant's right to funds payable from the Patient' Compensation Fund pursuant to I.C. § 27–12–15–1 *et seq.* and other applicable sections of said Act and the pending lawsuit in Fulton County where Claimant is making a claim against KRH. (This claim seeks to hold KRH responsible, *inter alia*, for actions taken by Lester in his capacity solely as Medical Director.)

> \* \* \*

> Claimant also reserves the right to proceed against KRH in the pending Fulton County lawsuit, in an attempt to collect additional damages against KRH. A part of that action is an attempt to hold KRH responsible for actions taken by Lester in his capacity as Medical Director of KRH on a theory of *respondent* [sic] *superior.* Claimant, Lester, and Med Pro expressly agree that this action, as it relates to Lester, is limited solely to actions taken by Lester in his capacity as Medical Director of KRH.

> \* \* \*

> In further consideration of the payment referred to in this Agreement, Claimant hereby agrees to and will indemnify and hold harmless, Lester, his employees, agents, servants, staff, and each of them, and Med Pro of and from any kind, including all costs, expenses and attorneys' fees in defending such claim, which may be asserted by any person or entity arising from the treatment and death of Alice J. Butler.

> It is expressly understood and agreed that the foregoing indemnity language does not include liability for any asserted claim, lien, subrogation claim, cause of action, obligation or any right of any kind arising from the actions or inactions of Lester in his capacity as Medical Director of KRH.

(R. 244, 246, & 249).

On May 22, 1996, the Butlers filed an amended complaint. Paragraph 2 of their amended complaint stated as follows:

Paragraph No. 14 of the original Complaint of the Plaintiff is hereby deleted and the following is substituted in its stead:

Plaintiff alleges that Alice J. Butler's cerebral vascular accident of July 29, 1992, and subsequent vegetative state are the direct result of acts of negligence committed by Dr. William Lester solely in his capacity as Medical Director of Kokomo Rehabilitation Hospital, as well as acts of negligence by other agents and employees of Kokomo Rehabilitation Hospital.

(S.R. 27).

On December 23, 1996, a judgment order approving the settlement agreement and release between the Butlers and the Indiana Patient's Compensation Fund was entered in the Marion Superior Court.

On February 17, 2000, the Butlers filed a second amended complaint. This second amended complaint was filed for the purpose of adding Continental Medical Systems, Inc. as an additional party defendant.

On July 10, 2000, the Butlers filed a motion for partial summary judgment on the issue of liability. On August 14, 2000, the Defendants filed their brief in opposition to the Butlers' motion for partial summary judgment. On August 15, 2000, after having an opportunity to review the Defendants' response to the Butlers' motion, the Butlers filed a reply brief, and at oral argument asserted that they were not limited to alleging liability of the Defendants for the actions of Dr. Lester solely in his capacity as medical director, but that they were also free to assert liability against the Defendants under *Sword v. NKC Hospitals, Inc.*, 714 N.E.2d 142 (Ind. 1999), for Dr. Lester's actions as a treating physician.

Subsequently, on August 24, 2000, the Defendants moved the trial court for a definitive ruling that Dr. Lester's actions could only be examined in terms of his responsibilities as medical director. On August 25, 2000, the trial court issued an order, finding that "the plaintiff has extinguished the claim against William Lester, M.D. as treating physician, and is therefore confined to pursuing this cause against the defendants based upon the actions of Dr. Lester as Medical Director." (S.R. 44). The trial court further held that material issues of fact exist as to the duties of the medical director at KRH, and, thus, denied the Butlers' motion for partial summary judgment.

On August 28, 2000, the Butlers asked the trial court to reconsider its order determining that they had extinguished their claims against Dr. Lester as treating physician. On August 29, 2000, the Butlers filed a motion to certify the order denying the Butlers' motion for partial summary judgment and the order on the Defendants' motion for a definitive ruling. On September 8, 2000, the trial court entered a reconsidered order on the Defendants' motion for a definitive ruling on Dr. Lester's actions as treating physician. The trial court held that the Butlers had preserved their claim against the Defendants for negligent acts of its medical director, but their claim against the Defendants for acts of Dr. Lester as treating physician had been resolved and could not be revived. The trial court also restated that summary judgment was not warranted because genuine issues of material fact exist as to the responsibility of the medical director for decisions of treating physicians at KRH.

On September 8, 2000, the trial court entered an order certifying the order denying the Butlers' motion for partial summary judgment and the court's reconsidered order on Defendants' motion for definitive ruling for interlocutory appeal. The Butlers now appeal.

## DISCUSSION AND DECISION

### I. *Trial Court's Grant of Defendants' Motion for a Definitive Ruling*

The Butlers argue that the trial court erroneously granted the Defendants' motion for a definitive ruling on the issue of Dr. Lester as treating physician.

[1–5] The grant or denial of a pretrial motion on evidentiary issues is within the sound discretion of the trial court. *Hopper v. Carey*, 716 N.E.2d 566, 570 (Ind.Ct.App.1999), *trans. denied.* The granting of such a motion is an adjunct of the trial court's inherent power to admit and exclude evidence. *Id.* The standard of review for admissibility of evidence issues is abuse of discretion. *Id.* "An abuse of discretion occurs only when the trial court's action is clearly erroneous and against the logic and effect of the facts and circumstances before the court." *Medical and Professional Collection Services, Inc. v. Bush,* 734 N.E.2d 626, 631 (Ind.Ct.App. 2000). Even if a trial court errs in a ruling on the admissibility of evidence, this court will only reverse if the error is inconsistent with substantial justice. *Hopper,* 716 N.E.2d at 570.

The Butlers argue that the trial court improperly based its order, granting the Defendants' motion for a definitive ruling, on the settlement agreement between Alice, Dr. Lester, and Lester's insurer. The Butlers maintain that any question as to the interpretation of the settlement agreement was not before the trial court. Moreover, the Butlers contend that the Defendants did not have standing and the trial court did not have subject matter jurisdiction to construe the provisions of the agreement.

In *Taylor v. Fall Creek Regional Waste Dist.,* 700 N.E.2d 1179, 1183 (Ind.Ct.App. 1998), *trans. denied,* this court held:

> The issue of standing focuses on whether the complaining party is the proper person to invoke the court's power. [citation omitted]. To have standing, a party must demonstrate a personal stake in the outcome of the law suit and be able to show that he was in immediate danger of sustaining some direct injury as a result of the conduct at issue. [citation omitted]. " '[M]ore fundamentally, standing is a restraint upon this Court's exercise of its jurisdiction in that we cannot proceed where there is no demonstrable injury to the complainant before us.' " *Hauer v. BRDD of*

*Indiana, Inc.,* 654 N.E.2d 316, 318 (Ind. Ct.App.1995), *trans. denied,* (quoting *City of Indianapolis v. Board of Tax Commissioners,* 261 Ind. 635, 638, 308 N.E.2d 868, 870 (1974)).

Additionally, in *Haswell v. Kramer,* 659 N.E.2d 146, 149 (Ind.Ct.App.1995), this court held that "[a] release is a contract that releases only those persons intended to be released."

Nonetheless, the Defendants maintain that they did not ask the trial court to construe the meaning of the settlement agreement, nor did they claim that they were a party to it. The agreement was submitted into evidence by the Butlers and accompanied their motion for partial summary judgment, as Exhibit B. The Defendants assert that the settlement agreement and amended complaint is evidence of the Butlers withdrawing any claim against them with regard to Dr. Lester as treating physician.

[6] As previously stated, paragraph 14 of the Butlers original complaint maintained that Alice's stroke and subsequent vegetative state were the direct result of various acts of negligence committed by Dr. Lester. In their amended complaint, the Butlers deleted paragraph 14 of their original complaint and replaced it with a paragraph asserting that Alice's stroke and subsequent vegetative state were the direct result of negligent acts committed by Dr. William Lester "solely in his capacity as Medical Director" of KRH. (S.R. 27). Consequently, this is the only paragraph in the Butlers complaint that specifically alleges that Dr. Lester was negligent and in what capacity he was negligent.

However, the Butlers assert that they followed the standards set forth by the trial rules and included a short and plain statement of their claim and demand for relief in their complaint. *See Palacios v. Kline,* 566 N.E.2d 573, 576 (Ind.Ct.App. 1991). Our supreme court has held that "[t]he rules do not require that the complaint state all the elements of a cause of

action. It must be remembered that our new rules are based on so-called notice pleadings in which a plaintiff essentially need only plead the operative facts involved in the litigation." *State v. Rankin,* 260 Ind. 228, 230–231, 294 N.E.2d 604, 606 (1973). Thus, the Butlers contend that they were not required to specifically allege that they were bringing an action against the Defendants for the acts of Dr. Lester as treating physician.

On the other hand, the Defendants contend that they were totally unaware that the Butlers intended to bring an action against them for the alleged negligent acts of Dr. Lester as treating physician. The Defendants maintain that they relied on the settlement agreement and the amended complaint to conclude that the Butlers withdrew any claim concerning Dr. Lester as treating physician.

In *Grzan v. Charter Hosp. of Northwest Indiana,* 702 N.E.2d 786, 794 (Ind.Ct.App.1998), this court held that under notice pleading, "the issue of whether a complaint sufficiently pleads a certain claim turns on 'whether the opposing party has been sufficiently notified concerning the claim . . . so as to be able to prepare to meet it.'" *Id.* (quoting *Noblesville Redevelopment Comm'n v. Noblesville Associates, Ltd.,* 674 N.E.2d 558, 563–64 (Ind. 1996)). A complaint's allegations are sufficient if they put a reasonable person on notice as to why a plaintiff sues. *Id.* For a defendant to make efficient and educated legal decisions regarding their case, the complaint must put the defendant on notice concerning why it is potentially liable and what it stands to lose. *See Noblesville Redevelopment Comm'n,* 674 N.E.2d at 564. "One of the main functions of pleading is to give notice to the parties of the nature of the claims and defenses, in order to help them prepare their cases." *See id.*

Accordingly, we find that the Defendants were not on notice of any claim that the Butlers may have asserted concerning Dr. Lester's acts as treating physician. We find that the language "solely in his capacity as Medical Director," which appears in both the settlement agreement and the amended complaint, demonstrates that the Butlers narrowed their claim against the Defendants and, in fact, withdrew any claim against the Defendants with regard to Dr. Lester in his capacity as treating physician. Therefore, because the Defendants were not on notice of this claim, the trial court's grant of their motion for a definitive ruling was not "clearly erroneous and against the logic and effect of the facts and circumstances before the court." *See Medical and Professional Collection Services, Inc.,* 734 N.E.2d at 631.

## II. *Summary Judgment*

Next, the Butlers argue that the trial court erred in denying their motion for partial summary judgment on the issue of liability.

The standard of review when reviewing a grant or denial of summary judgment is well-settled. Our standard of review is the same as it was for the trial court: whether there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Miller v. Grand Trunk Western R.R., Inc.,* 727 N.E.2d 488, 491 (Ind.Ct.App.2000). We must consider the pleadings and evidence designated pursuant to Ind. Trial Rule 56(C) without deciding their weight or credibility. *Id.* Summary judgment should be granted only if such evidence shows that there is no genuine issue of material fact and that judgment is warranted as a matter of law. *Id.*

### A. *Direct Liability for the Care and Treatment of Alice Butler*

The Butlers claim that the facts of this case establish that the Defendants are "deemed" by law to be the provider of care to Alice, and, thus, directly liable for her care and treatment. It is the Butlers' contention that the acts of Dr. Lester as treating physician are directly imputed to the Defendants. In support of their argument, the Butlers rely on *Sword.* In *Sword,* 714 N.E.2d at 152, our supreme court held:

that a hospital will be deemed to have held itself out as the provider of care unless it gives notice to the patient that it is not the provider of care and that the care is provided by a physician who is an independent contractor and not subject to the control and supervision of the hospital.

We find that the Butlers' argument is misplaced for two reasons. First, as discussed above, we found that the Butlers withdrew any claim against KRH with regard to the actions of Dr. Lester as treating physician. In their argument concerning direct liability, the Butlers only discuss KRH being directly liable for the actions of Dr. Lester as treating physician. Therefore, we find that the Butlers cannot proceed with this claim because a necessary element of their claim has been withdrawn.

Secondly, even if the Butlers were able to discuss Dr. Lester as treating physician, which they are not, we still find that their direct liability argument is inappropriate. The crux of the Butlers' argument focuses on *Sword.* In *Sword,* the principal issue was whether a hospital could be held liable for the alleged negligence of an independent contractor anesthesiologist. *Id.* at 147. There were "no allegations of direct corporate negligence, that is, that the hospital itself was negligent. Because the alleged negligence was not committed by [the hospital] but instead by a physician working at [the hospital]." *Id.* Moreover, in *Sword,* the plaintiff argued that, "under the doctrine of apparent or ostensible agency, [the hospital was] vicariously liable for the actions of its apparent agent." *Id.* at 152. Additionally, the court, at no time, analyzed this case under a direct liability theory. In fact, the court's entire analysis focuses on vicarious liability. Consequently, we find that any argument that the Butlers have made concerning direct liability based upon *Sword* is inappropriate and inapplicable. Therefore, we find that the trial court properly denied the Butlers' motion for partial summary judgment on the issue of direct liability against the Defendants.

### B. *Vicarious Liability for the Care and Treatment of Alice Butler*

Finally, while it is the position of the Butlers that the Defendants are directly liable for the harm caused to Alice, they also argue that the Defendants are vicariously liable for the care and treatment of Alice. It is the Butlers' contention that the acts of Dr. Lester as treating physician may be indirectly imputed to the Defendants.

In *Sword,* our supreme court stated that:

> Vicarious liability is "indirect legal responsibility." It is a legal fiction by which a court can hold a party legally responsible for the negligence of another, not because the party did anything wrong but rather because of the party's relationship to the wrongdoer. Courts employ various legal doctrines to hold people vicariously liable, including respondeat superior, apparent or ostensible agency, agency by estoppel, and the non-delegable duty doctrine.

*Id.* at 147 (citations omitted).

Again, as discussed above, we found that the Butlers withdrew any claim against KRH with regard to the actions of Dr. Lester as treating physician. Thus, as it relates to Dr. Lester as treating physician, we find that the Butlers cannot proceed with this claim because a necessary element of their claim has been withdrawn.

As this claim relates to Dr. Lester as Medical Director or any other employee at KRH, vicarious liability would be the appropriate avenue to find KRH negligent for the acts of its employees. However, vicarious liability does not automatically prove negligence. It is necessary for the Butlers to show that no genuine issues of material fact exist as to the negligence of KRH's employees. *See Miller,* 727 N.E.2d at 491. The Butlers have not made such an assertion. Consequently, we find that the trial court properly denied the Butlers' motion for partial summary judgment on

the issue of vicarious liability against the Defendants.

## CONCLUSION

Based on the foregoing, we conclude that the trial court properly granted the Defendants' motion for a definitive ruling that foreclosed any claims against the Defendants based on any alleged negligence of Dr. Lester as treating physician. We also conclude that the trial court properly denied the Butlers' motion for partial summary judgment on the issue of liability against the Defendants.

Affirmed.

ROBB and DARDEN, JJ., concur.