


FILED

Dec 22 2025, 8:57 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Court of Appeals of Indiana

Timothy Stabosz,

*Appellant-Defendant/Cross-Appellee*

v.

Shaw Friedman,

*Appellee-Plaintiff/Cross-Appellant*

---

December 22, 2025

Court of Appeals Case No.
24A-PL-2536

Appeal from the LaPorte Circuit Court

The Honorable Stephen R. Bowers, Special Judge

Trial Court Cause No.
46C01-2106-PL-1110

---

**Opinion by Judge Brown**
Judges Weissmann and Felix concur.

**Brown, Judge.**

[1] Timothy Stabosz appeals the trial court's order reinstating an order belatedly granting a Motion to Correct Error filed by Shaw Friedman after the motion was deemed denied pursuant to Ind. Trial Rule 53.3. On cross-appeal, Friedman seeks appellate review of the issues raised in his Motion to Correct Error. We reverse and vacate the belated order and reinstate the jury verdict in favor of Stabosz.

## Facts and Procedural History

[2] During the relevant time period, Stabosz served as the elected Auditor of LaPorte County and Friedman served as the LaPorte County Attorney. On February 10, 2021, Friedman filed a Complaint for Defamation against Stabosz alleging that Stabosz had defamed him through various statements made in emails and social media posts. On May 18, 2021, Stabosz filed a Motion to Dismiss pursuant to the Indiana Anti-SLAPP Act, Ind. Code § 34-7-7-9, which was denied by the trial court on December 7, 2021. Friedman filed a Second Amended Complaint on December 13, 2021. Stabosz filed an interlocutory appeal of the trial court's denial of his Motion to Dismiss, and this Court affirmed the denial in a published opinion. *See Stabosz v. Friedman*, 199 N.E.3d

800 (Ind. Ct. App. 2022), *trans. denied*.  On April 6, 2023, the Indiana Supreme Court denied transfer by a vote of 3-2.[1]

[3]     A five-day jury trial began on June 24, 2024.  On June 28, 2024, the jury returned a unanimous verdict in favor of Stabosz.  On July 27, 2024, Friedman filed a Motion to Correct Error raising five grounds for relief and requesting a new trial.  Specifically, Friedman asserted: (1) the verdict is against the weight of the evidence or, clearly erroneous as contrary or not supported by the evidence; (2) the court committed reversible error in modifying Final Instruction No. 8; (3) the court abused its discretion in excluding the testimony of former Indiana Supreme Court Justice Steven H. David; (4) the affidavit of an alternate juror establishes that at least one juror disregarded the court's admonition to not conduct any extra-judicial investigation; and (5) the court erred in not taking judicial notice of Friedman's second amended complaint. On August 12, 2024, Stabosz filed an Amended Statement in Opposition to the Motion to Correct Error.

[4]     On August 22, 2024, the court held a hearing on the motion.  Thirty-five days later, on September 26, 2024, the trial court entered an order denying Friedman relief on four of the requested grounds but granting Friedman's Motion to Correct Error on one ground and vacating the jury verdict entered on June 28,

---

[1] Justices Massa and Slaughter voted to grant the petition to transfer.

2024.[2] Specifically, the court determined that it committed reversible error in failing to give the version of Final Instruction No. 8 as the court had initially agreed to give at the time of the final instruction conference, and that the appropriate remedy was to grant a new trial.

[5] On October 2, 2024, Stabosz filed a Motion for Relief pursuant to Ind. Trial Rule 60. Stabosz argued that pursuant to Ind. Trial Rule 53.3(A), Friedman's Motion to Correct Error was deemed denied due to the court's failure "to rule on [the] Motion to Correct Error within thirty (30) days after it was heard[.]" Appellant's Appendix Volume II at 163. Accordingly, Stabosz asserted that the court's September 26, 2024 order was void because it was entered more than thirty days after the hearing on the motion. On October 3, 2024, the court granted Stabosz's Motion For Relief, therein ordering that the court's September 26, 2024 order "is hereby rescinded." *Id*. at 168. Also on October 3, 2024, Friedman filed a Response in Opposition to Motion for Relief, and on October 4, 2024, Friedman filed a Motion to Reconsider Order of October 3, 2024.

[6] On October 11, 2024, the court issued an order vacating its October 3, 2024 order and reinstating its September 26, 2024 order granting Friedman's Motion to Correct Error, vacating the jury verdict, and ordering a new trial. Stabosz

---

[2] Although the September 26, 2024 order states that the hearing on the Motion to Correct Error occurred on August 27, 2024, both parties acknowledge, and the Chronological Case Summary reflects, that the hearing did, in fact, occur on August 22, 2024.

filed a Notice of Appeal on October 17, 2024, and an amended-Notice of Appeal on November 12, 2024.

## Discussion

### I.

[7] Stabosz asserts that the trial court's belated grant of Friedman's Motion to Correct Error is a nullity, or "at a minimum, that it is void." Appellant's Brief at 20. Generally, we review the grant or denial of a motion to correct error for an abuse of discretion. *Indianapolis Pub. Transportation Corp. v. Bush*, 266 N.E.3d 719, 726 (Ind. 2025). That is to say, we will only reverse where the trial court's judgment is clearly against the logic and effect of the facts and circumstances before it or where the trial court errs on a matter of law. *Berg v. Berg*, 170 N.E.3d 224, 227 (Ind. 2021). A trial court exceeds its discretion when its decision is unlawful, illogical, or otherwise unreasonable. *Expert Pool Builders, LLC v. Vangundy*, 224 N.E.3d 309, 312 (Ind. 2024).

[8] Motions to correct error are governed by Ind. Trial Rule 53.3. *Wurster Const. Co. v. Essex Ins. Co.*, 918 N.E.2d 666, 671 (Ind. Ct. App. 2009). Specifically, the rule provides:

> In the event a court fails for forty-five (45) days to set a Motion to Correct Error for hearing, or fails to rule on a Motion to Correct Error within thirty (30) days after it was heard or forty-five (45) days after it was filed, if no hearing is required, the pending Motion to Correct Error shall be deemed denied. Any appeal shall be initiated by filing the notice of appeal under Appellate Rule 9(A) within thirty (30) days after the Motion to Correct Error is deemed denied.

Ind. Trial Rule 53.3(A). Regarding the "deemed denied" language, we have explained that "[t]his denial is automatic; it is 'self-activating upon the passage of the requisite number of days.'" *Wurster*, 918 N.E.2d at 671 (citations omitted).

[9] The Indiana Supreme Court has recognized when a trial court purports to grant a motion to correct error belatedly, that is, after the expiration of the thirty-day "deemed denied" deadline in the rule, issues arise regarding "judicial efficiency and fairness to litigants," including "unnecessary, impractical, harsh, and unfair consequences." *Cavinder Elevators, Inc. v. Hall*, 726 N.E.2d 285, 289 (Ind. 2000). The *Cavinder* Court determined that a belated grant of a motion to correct error, which is entered after the motion is deemed denied, is not a nullity; rather, it is "voidable and subject to enforcement of the deemed denied provision of Trial Rule 53.3(A)." *Id*. at 288.

[10] We have determined that the analysis this Court must follow when presented with the question of the validity of a belated grant of a motion to correct error involves two steps. Initially, we must determine whether a belated grant is void. *Wurster*, 918 N.E.2d at 672 (citing *Cavinder*, 726 N.E.2d at 288 and *Paulsen v. Malone*, 880 N.E.2d 312, 313 (Ind. Ct. App. 2008)). If the belated grant is void, then and only then do we address the second issue—whether the issues raised by the movant in its motion to correct error can again be raised on cross-appeal. *Id*. (citing *HomEq Servicing Corp. v. Baker*, 883 N.E.2d 95, 97 (Ind. 2008) and *Cavinder*, 726 N.E.2d at 288).

[11]     Here, Friedman filed his Motion to Correct error on July 27, 2024. The court held a hearing on August 22, 2024, and when no ruling came within thirty days of such hearing, the motion was deemed denied on September 23, 2024. On September 26, 2024, prior to Friedman's deadline for appealing, the trial court entered the belated order granting the Motion to Correct Error in favor of Friedman. When Stabosz timely appealed the trial court's order reinstating the belated grant of the Motion to Correct Error, the order became "subject to enforcement of the 'deemed denied'" provision of Ind. Trial Rule 53.3(A). In other words, the belated grant of the Motion to Correct Error was rendered void. *See Wurster*, 918 N.E.2d at 672-673 ("When Wurster timely appealed the trial court's Belated Grant, that order was 'subject to the enforcement of the "deemed denied" provision of Trial Rule 53.3(A);' that is, the Belated Grant was made void.").

[12]     Finding that the trial court's belated grant of Friedman's Motion to Correct Error is void, we address the second step of the inquiry, whether the issues raised by Friedman in his Motion to Correct Error can again be raised on cross-appeal. Our precedent directs that because the court's belated grant here was entered before Friedman initiated an appeal of the deemed denial but during the time period within which Friedman was entitled to initiate an appeal, and because Stabosz timely appealed the belated grant of Friedman's motion claiming that it was void pursuant to Ind. Trial Rule 53.3(A), Friedman has the right to cross-appeal on the issues presented in his "deemed denied" Motion to Correct Error. *See Wurster*, 918 N.E.2d at 677 (reconciling "seemingly

inconsistent" Indiana Supreme Court precedent and determining that on appeal from a belated grant of a motion to correct error entered within the time period the proponent was entitled to appeal, proponent of deemed denied motion has the right, in response to opponent's appeal invoking the deemed denied provision of Ind. Trial Rule 53.3(A), to assert cross-error on issues presented in the deemed denied motion.)[3]

## II.

[13] We next address the issues raised by Friedman in his Motion to Correct Error that he now raises on cross-appeal. Friedman first claims that the trial court committed reversible error in "modifying" one of the "Actual Malice" jury instructions, Final Instruction No. 8, after the final instruction conference, striking his proposed language that provided "non-exhaustive examples of what could constitute reckless disregard." Appellee/Cross-Appellant's Brief at 22. The manner of instructing a jury is left to the sound discretion of the trial court.

---

[3] This is referred to as the "Footnote 4 exception" espoused in *Cavinder* and explained by *HomEq. Wurster*, 918 N.E.2d at 677. Specifically, the *Cavinder* Court stated:

> If the trial court belatedly grants a motion to correct error before the party filing the motion to correct error initiates an appeal but during the time period within which such party is entitled to appeal from the deemed denial, the party may assert as cross-error the issues presented in its "deemed denied" motion to correct error.

*Cavinder*, 726 N.E.2d at 289 n.4. The *HomEq* Court explained:

> This exception recognizes the probable correctness of a trial court's decision modifying its own previous ruling and permits the proponent of the belatedly-granted motion to delay initiating a possibly unnecessary appeal until ascertaining whether the opponent of the motion chooses to acquiesce in the belated ruling. If the opponent appeals, however, seeking to invoke the "deemed denied" provision of T.R. 53.3(A), the proponent may then by cross-appeal seek appellate review of the merits of its motion to correct error.

*HomEq*, 883 N.E.2d at 97.

*Albores v. State*, 987 N.E.2d 98, 99 (Ind. Ct. App. 2013), *trans denied*. When reviewing a trial court's decision to decline a proposed jury instruction, we consider whether the instruction (1) correctly states the law, (2) is supported by the evidence, and (3) is covered in substance by other instructions that are given. *Id*. More importantly, "[w]e consider jury instructions as a whole and in reference to each other and do not reverse the trial court . . . unless the instructions as a whole mislead the jury as to the law in the case." *Id*. (quoting *Lyles v. State*, 834 N.E.2d 1035, 1048 (Ind. Ct. App. 2005), *trans. denied*).

[14]     We begin by noting that "[a]ctual malice exists when the defendant publishes a defamatory statement 'with knowledge that it was false or with reckless disregard of whether it was false or not.'" *Journal-Gazette Co. v. Bandido's, Inc.*, 712 N.E.2d 446, 456 (Ind. 1999). We observe that the trial court here gave two instructions on actual malice. Final Instruction No. 2 stated:

> In order to recover damages, Friedman must prove by clear and convincing evidence that Stabosz made one or more of the statements with actual malice, which is defined in these instructions.
>
> * * * * *
>
> Actual malice is not an objective standard of reasonableness; rather it is a subjective standard that requires one challenging the speech to prove by clear and convincing evidence that the speaker in fact entertained serious doubts as to the truth of his publication, or acted with a high degree of awareness of probable falsity.

Appellant's Appendix Volume II at 100. As modified, Final Instruction No. 8 stated: "Actual malice can also be proven by clear and convincing evidence that Timothy Stabosz made the statements with reckless disregard for the truth of the statements." *Id.* at 106.[4]

[15] Friedman concedes that neither actual malice instruction given by the court was an incorrect statement of law. Indeed, the phrase "acted with a high degree of awareness of probable falsity" as used in Final Instruction No. 2 is the functional equivalent of "reckless disregard" in terms of proof of actual malice. *West v. J. Greg Allen Builder, Inc.*, 92 N.E.3d 634, 647 (Ind. Ct. App. 2017) (citing *Bandido's*, 712 N.E.2d at 456). We disagree with Friedman's assertion that "reckless disregard" was not adequately defined for the jury absent his proposed list of examples of what might constitute reckless disregard, and we disagree that the trial court abused its discretion in declining to give such illustrative examples of possible factual scenarios that would satisfy such definition.

[16] Although Friedman is correct that the Indiana Supreme Court, relying on United States Supreme Court precedent, has identified five circumstances where "the profession of good faith by the defendant [in making a defamatory

---

[4] Friedman's proposed instruction included additional language that provided:

> Non-exhaustive examples of reckless indifference for the truth includes circumstances which: (1) the defendant fabricates the statement; (2) the statement is the product of defendant's imagination; (3) the statement is so inherently improbable that only a reckless person would have made the statement; and (4) there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports.

Appellant's Appendix Volume II at 80 (footnote omitted).

statement] would not be persuasive" to "dispel the notion that the defendant acted with actual malice," *see Bandido's*, 712 N.E.2d at 462 n.27 (quoting *St. Amant v. Thompson*, 390 U.S. 727, 732, 88 S.Ct. 1323 (1968)), this is not the same as rendering a jury instruction without such examples per se insufficient. "The mere fact that certain language or expressions are used in the opinions of Indiana's appellate courts does not make it proper language for instructions to a jury." *Gravens v. State*, 836 N.E.2d 490, 494 (Ind. Ct. App. 2005), *trans. denied*. Friedman directs us to no authority, and we are unaware of any, *requiring* that jury instructions defining actual malice include a list of examples of reckless disregard or indifference for the truth that would support a finding of actual malice.[5]

[17] We further find Friedman's reliance on *Patten v. Smith*, 360 N.E.2d 233 (Ind. Ct. App. 1977), misplaced. Friedman relies on *Patten* for the proposition that "it is error for a court to refuse to define technical or legal phrases in connection with material issues in its instructions when properly and timely requested to do so." Appellee/Cross-Appellant's Brief at 24. In *Patten*, this Court held that trial

---

[5] Our review of the cases cited by Friedman reveals that most of those cases involve appeals from the grant or denial of motions for summary judgment on the issue of actual malice and the appellate court was reviewing the sufficiency of designated evidence on actual malice. The cases did not discuss actual malice jury instructions or the requirements thereof. *See, e.g., Bandido's,* 712 N.E.2d 446; *Pack v. Truth Publ'g Co.*, 122 N.E.3d 958 (Ind. Ct. App. 2019); *McCollough v. Noblesville Schs.*, 63 N.E.3d 334 (Ind. Ct. App. 2016). As far as Friedman's reliance on *State Farm Fire & Cas. Co. v. Radcliff*, 987 N.E.2d 121 (Ind. Ct. App. 2013), in which we reviewed the sufficiency of the evidence to support a defamation jury verdict, we observed that the United States Supreme Court has "provided examples of the kind of proof that would likely support a finding of actual malice," but we made no holding that such examples were required or even appropriate for inclusion in jury instructions defining actual malice. *Radcliff*, 987 N.E.2d at 148 (citing *St. Amant*, 390 U.S. at 732).

courts must define the legal term "reckless disregard" when requested—but we specified what definition was required. We stated that the proper instruction should inform the jury that reckless disregard means the defendant "in fact entertained serious doubts as to the truth of his publication." *Patten*, 360 N.E.2d at 239. This is precisely what Final Instruction No. 2 provided here. Moreover, *Patten* did not require illustrative examples—it required only a legal definition. The trial court here provided that definition.

[18] Significantly, our review of the jury instructions as a whole and in reference to each other, does not convince us that the jury was misled.[6] In other words, it is well established that error in a particular instruction will not result in reversal unless the entire jury charge misleads the jury as to the law of the case. *Pattison v. State*, 54 N.E.3d 361, 365 (Ind. 2016). Friedman has not met his burden to establish that instruction of the jury here resulted in reversible error.

[19] We next address Friedman's claim that the trial court abused its discretion in its pretrial ruling excluding the expert opinion testimony of former Indiana Supreme Court Justice David.[7] According to Friedman, Justice David offered opinions relevant to the issue of actual malice and damages. The grant or

---

[6] We observe that Final Instruction No. 9 instructed the jury: "In deciding whether Timothy Stabosz knew the communication was false or had serious doubts as to the truth of the communication, you may consider Timothy Stabosz's attitude or ill will toward Shaw Friedman." Appellant's Appendix Volume II at 107.

[7] On March 20, 2024, Stabosz filed a pre-trial Motion to Exclude the Testimony of Justice Steven H. David. Friedman filed a response, and the court held a hearing on April 16, 2024. On June 17, 2024, the court granted Stabosz's Motion to Exclude.

denial of a pretrial motion on evidentiary issues is within the sound discretion of the trial court. *Butler ex rel. Est. of Butler v. Kokomo Rehab. Hosp., Inc.*, 744 N.E.2d 1041, 1046 (Ind. Ct. App. 2001), *trans. denied*. "The granting of such a motion is an adjunct of the trial court's inherent power to admit and exclude evidence." *Id*. The standard of review for admissibility of evidence issues is abuse of discretion. *Id*. "An abuse of discretion occurs only when the trial court's action is clearly erroneous and against the logic and effect of the facts and circumstances before the court." *Id*. (citation omitted). "Even if a trial court errs in a ruling on the admissibility of evidence, this court will only reverse if the error is inconsistent with substantial justice." *Id*.

[20] Even assuming exclusion of Justice David's opinion testimony was error, any such error was harmless. Ind. Appellate Rule 66(A) provides that "[n]o error or defect in any ruling or order or in anything done or omitted by the trial court or by any of the parties is ground for granting relief or reversal on appeal where its probable impact, in light of all the evidence in the case, is sufficiently minor so as not to affect the substantial rights of the parties." Under this test, the party seeking relief bears the burden of demonstrating how, in light of all the evidence in the case, the error's probable impact undermines confidence in the outcome of the proceeding below. *Hayko v. State*, 211 N.E.3d 483, 492 (Ind. 2023), *reh'g denied*, *cert. denied*, 144 S. Ct. 570 (2024). The jury's unanimous verdict in favor of Stabosz reflects that Friedman failed to prove actual malice by clear and convincing evidence. Friedman has not met his burden to convince us that Justice David's purported opinion testimony that the statements made by

Stabosz, if true, would subject Friedman to criminal charges or professional disciplinary action, or regarding the value of Friedman's reputation as a lawyer, would have changed this outcome. We cannot say that reversal is warranted on this basis.

[21] Last, we address Friedman's claim that the trial court erred in declining to take judicial notice of his second amended complaint under Ind. Evidence Rule 201(c). That rule provides that the court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Ind. Evidence Rule 201(c)(2). When Friedman originally requested the court take judicial notice of his second amended complaint, the court responded: "I'm not clear on what exactly I'm supposed to take judicial notice of. Obviously, it's part of the record here, but if it's not evidentiary—I'm not clear on what you're asking the Court to do." Appellant/Cross-Appellee Reply Brief at 49 (citing Trial Transcript Volume II at 231).[8] Friedman's counsel then indicated he was "not" actually asking for judicial notice but rather intended to enter the

---

[8] We note that we have been provided with only the transcript of the hearing on Friedman's Motion to Correct Error and the portion of the trial transcript regarding the parties' arguments on final jury instructions, but not the complete transcript of the jury trial. On cross-appeal, it was Friedman's duty, as appellant, to provide an adequate record for review of the issue raised. *See Page v. Page*, 849 N.E.2d 769, 772 (Ind. Ct. App. 2006). Although Friedman states in his brief that he "requested the court reporter to transcribe and certify the complete trial transcript for purposes of his cross-appeal," Appellee/Cross-Appellant's Brief at 24 n.4, neither such request nor the complete trial transcript appears in our appellate record. Without a transcript, we are unable review the actual argument presented to the trial court on this issue. However, Friedman does not appear to dispute the substance of his colloquy with the trial court cited above, the veracity of which is confirmed by the court's description of the colloquy as provided in its void belated order.

complaint as an exhibit through the testimony of a witness who had never seen the complaint. *Id.* The court declined to admit the complaint as an exhibit.

[22] We observe that, in its void belated order denying the Motion to Correct Error as to this specific issue, the trial court observed that Friedman's purported request for judicial notice during trial "made no effort to identify what facts [Friedman] sought to have noticed by the Court." Appellee's Appendix at 7. Indiana courts consistently distinguish between judicial notice of the existence or filing of a pleading and "whether or not facts recited in those pleadings are susceptible to judicial notice." *Lutz v. Erie Ins. Exch.*, 848 N.E.2d 675, 679 (Ind. 2006). "[F]acts recited within the pleadings and filings that are not capable of ready and accurate determination are not suitable for judicial notice." *Brown v. Jones*, 804 N.E.2d 1197, 1202 (Ind. Ct. App. 2004), *trans. denied*. As it appears that Friedman's request went beyond mere recognition of the second amended complaint's existence, and it was unclear to the court what established facts he sought to introduce before the jury, we cannot say the court abused its discretion. [9]

---

[9] Friedman raised some issues and arguments in his Motion to Correct Error that he does not again raise on cross-appeal, so we decline to address those issues. Additionally, to the extent that Friedman raises certain evidentiary issues on cross-appeal, *see* Appellee/Cross-Appellant's Brief at 37-38 (arguing the court erred in excluding impeachment evidence, namely a photograph of one of Stabosz's witnesses wearing an "Oath Keepers Vest," and in excluding evidence of Stabosz's prior use of defamatory language when in disputes with others), we decline to address those issues as they were not specifically raised to the trial court in his Motion to Correct Error. Friedman may only assert "as cross-error" the issues presented in his "deemed denied" Motion To Correct Error. *See Cavinder*, 726 N.E.2d at 289 n.4.

For the foregoing reasons, we vacate the trial court's belated grant of Friedman's Motion to Correct Error as well as the related orders that followed, including the court's October 11, 2024 order reinstating its belated order granting such motion. The jury verdict in favor of Stabosz stands.

Reversed.

Weissmann, J., and Felix, J., concur.

ATTORNEYS FOR APPELLANT

Margaret M. Christensen
Sarah Katherine Jackson
Dentons Bingham Greenebaum LLP
Indianapolis, Indiana

Harold G. Hagberg
Crown Point, Indiana

Andrew B. Jones
Michael P. Smyth
Jones Law Office LLC
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Robert J. Palmer
R. William Jonas, Jr.
May • Oberfell • Lorber
Mishawaka, Indiana