**CENTENNIAL MORTGAGE, INC.,**
**Appellant-(Defendant),**

v.

**David BLUMENFELD, Appellee-**
**(Plaintiff).**

No. 71A04–0007–CV–299.

Court of Appeals of Indiana.

April 3, 2001.

James F. Groves, South Bend, IN, Attorney for Appellant.

Aladean M. Derose, South Bend, IN, Attorney for Appellee.

## OPINION

ROBB, Judge.

Centennial Mortgage, Inc. ("Centennial") and David Blumenfeld appeal the trial

court's denial of their respective Motions to Correct Errors. We affirm.

## Issues

Centennial raises the following consolidated and restated issues for our review: whether Blumenfeld had standing to sue Centennial as a third-party beneficiary under a contract to build a residential care facility.

On cross-appeal, Blumenfeld raises the following restated issue for our review:

1. Whether the trial court properly instructed the jury; and
2. Whether the damage award was inadequate.

## Facts and Procedural History

The facts reveal that Lake County Trust Company ("Trustee") is the trustee of trust number 3788 and the beneficiary of said trust is Miller Beach Limited Partnership ("Miller Beach"). Trustee holds title to property located at 4905 Melton Road, Gary, Indiana on behalf of Miller Beach. On January 18, 1989, Trustee and Miller Beach entered into a contract with Centennial entitled "Building Loan Agreement" whereupon Centennial loaned Trustee and Miller Beach $2,270,000.00 to renovate and convert the Melton Road property into a residential care facility. Centennial is a mortgage lender with its principal place of business in South Bend, Indiana. Partners of Miller Beach provided the remaining amounts of funds for the construction project. David Blumenfeld was one of the partners. The loan issued by Centennial for the construction project was insured [1] by the Housing and Urban Development ("HUD").[2]

On August 18, 1989, Interlock Service Corporation entered into a contract entitled "Construction Contract" [3] with Trustee and Miller Beach to renovate and convert the Melton Road property into a residential care facility. On August 29, 1989, Webb Construction assumed Interlock Service Corporation's obligations under the contract because Interlock had been fired for poor workmanship. On August 30, 1989, Webb Construction entered into a contract entitled "Completion Assurance Agreement" [4] with Trustee, Miller Beach, and Centennial. The Completion Assurance Agreement required Webb Construction to provide a credit in the amount of $237,760.20 as assurance that the construction company would fulfill its contractual obligations in building the residential care facility.

However, Webb Construction was unable to supply the assurance funds. Therefore, Blumenfeld personally supplied the full amount of the assurance funds in the form of an irrevocable letter of credit drawn upon Amalgamated Trust and Savings Bank which listed Blumenfeld as "applicant" and Centennial as "beneficiary." The construction project was certified by HUD as substantially completed on April 30, 1990. Because several of the subcontractors had not been paid, mechanic's

---

1. When HUD insures a mortgage, the holder of the mortgage in the event of default does not have to foreclose on the property and become a property owner. Rather, the holder of the mortgage may file a claim with HUD and collect the money they have paid out for the mortgage. R. 764. In the present case, Centennial assigned the mortgage to HUD and HUD deducted the amount secured by the irrevocable letter of credit from Centennial's claim. See R. 71.

2. We note that HUD is given such authority pursuant to Section 232 of the National Housing Act.

3. This is a HUD prescribed form contract.

4. This is also a HUD prescribed form contract.

liens were imposed against the Melton Road property. In January of 1992, HUD advised Centennial to draw upon the irrevocable letter of credit. Subsequently, Centennial informed Webb Construction and Blumenfeld that it would assign the loan to HUD on July 30, 1992, and that in conjunction with the assignment it would draw on the irrevocable letter of credit.

On July 31, 1992, Webb Construction and Blumenfeld filed a complaint against Centennial requesting, among other things, injunctive relief to prevent Centennial from withdrawing the irrevocable letter of credit. Following a hearing, the trial court denied the request for injunctive relief. Subsequently, Centennial withdrew the full amount of Blumenfeld's irrevocable letter of credit, $237,760.20.

On August 16, 1995, Blumenfeld filed an amended complaint with the trial court against Centennial alleging breach of contract and conversion.[5] On January 25, 1996, Blumenfeld filed with the trial court a motion for partial summary judgment. Following a hearing, the trial court denied Blumenfeld's motion. On May 20, 1996, Blumenfeld filed with the trial court a petition for certification of interlocutory appeal that was ultimately denied.[6]

On February 17, 2000, a jury trial commenced in the St. Joseph County Superior Court. At the conclusion of the evidence, Blumenfeld filed a motion for judgment on the evidence, a motion that the trial court denied. Subsequently, the jury awarded Blumenfeld $120,760.00. On March 13, 2000, the trial court entered an order of judgment for Blumenfeld against Centennial in the amount of $193,890.93.[7] There-

after, the parties filed cross Motions to Correct Errors. Following a hearing, the trial court denied both Blumenfeld and Centennial's Motions to Correct Errors. This appeal ensued.

*Discussion and Decision*

### I. Standard of Review for Motion to Correct Errors

A trial court has wide discretion to correct errors and grant new trials. *Gregor v. State*, 646 N.E.2d 52, 53 (Ind.Ct. App.1994). We will reverse only for an abuse of discretion. *Id.* An abuse of discretion will be found when the trial court's action is against the logic and effect of the facts and circumstances before it and the inferences which may be drawn therefrom. *Id.* An abuse of discretion also results from a trial court's decision that is without reason or is based upon impermissible reasons or considerations. *Id.*

### II. Centennial's Appeal

Centennial contends that the trial court erred in denying its Motion to Correct Errors because Blumenfeld was not a third-party beneficiary under the contract to build the residential care facility. We disagree.

### A. Standard of Review for Contract Interpretation

We note initially that the interpretation and construction of contract provisions is a function for the courts. *Kiltz v. Kiltz*, 708 N.E.2d 600, 602 (Ind.Ct.App. 1999), *trans. denied.* On appeal, our standard of review is essentially the same as that employed by the trial court. Unless

---

5. We note that Webb Construction was listed as a plaintiff in the amended complaint. However, the trial court ultimately dismissed Webb Construction as a party.

6. It appears that Blumenfeld filed a motion for partial summary judgment on March 31,

1998. However, the record contains no order regarding the disposition of this motion.

7. It is apparent from the record that this figure includes the damage award, prejudgment interest, and costs of the litigation. R. 361.

the terms of a contract are ambiguous, they will be given their plain and ordinary meaning. *Ostrander v. Board of Dirs., Porter County,* 650 N.E.2d 1192, 1196 (Ind.Ct.App.1995), *trans. denied.* The terms of a contract are not ambiguous merely because controversy exists between the parties concerning the proper interpretation of terms. *Piers v. American United Life Ins. Co.,* 714 N.E.2d 1289, 1290–91 (Ind.Ct.App.1999). Where the terms of a contract are clear and unambiguous, the terms are conclusive and we will not construe the contract or look at extrinsic evidence but will merely apply the contractual provisions. *Jackson v. DeFabis,* 553 N.E.2d 1212, 1215 (Ind.Ct.App.1990).

## B. Third–Party Beneficiary

■ Our initial inquiry is to determine the scope of the instrument pursuant to which Blumenfeld argues he is entitled to sue Centennial for recovery of the irrevocable letter of credit. Article Six of the Construction Contract entered into between Webb Construction, Trustee, and Miller Beach [8], provides in pertinent part that:

> [Webb Construction] shall furnish to [Trustee and Miller Beach] assurance of completion of the work in the form of Completion Assurance Agreement and Letter of Credit in the amount of $237,760.20.

R. 860.[9] The Completion Assurance Agreement entered into between Webb Construction, Trustee, and Centennial on August 30, 1989, provides in pertinent part that:

> WHEREAS [Webb Construction] and [Trustee] have entered *an assumption* of a Construction Contract dated August 29, 1989, providing for the construction of a housing project as described in said Contract, said project being known as HUD project No. 073–43095–P–WAM–SR, ..., and
>
> WHEREAS the construction of said project is to be financed by a construction loan made to [Trustee] by [Centennial], which is secured by a Mortgage ..., to be insured by [HUD] ..., and
>
> WHEREAS [Centennial] is unwilling to make advances of mortgage proceeds and [HUD] is unwilling to insure the Mortgage unless [Webb Construction] shall furnish proper assurance to [Trustee] and to [Centennial] for the performance of the obligations of [Webb Construction] under said Construction Contract including but not limited to:
>
> (a) the completion of said project in accordance with drawings and specifications referred to in said Construction Contract;
>
> (b) the completion of said project free and clear of any liens, claims or encumbrances whatsoever, except for the lien of the insured mortgage;
>
> (c) the payment of all mechanics and laborers employed in the construction of the project at wages prevailing in the

---

8. Although Trustee is included as a party in all of the HUD prescribed contracts, Miller Beach implicitly is also a party since Trustee acted on behalf of Miller Beach.

9. We note that it appears from the record that Webb Construction merely assumed Interlock Service Corporation's contractual obligations under the Construction Contract and that another instrument specifically naming them as a party was never formulated. The Completion Assurance Agreement clearly states that Webb Construction assumed the obligations as a general contractor under the Construction Contract and the parties do not dispute Webb Construction's status as a party to this agreement. Thus, the above-mentioned contractual language has been taken from the Construction Contract which specifically names Interlock Service Corporation as a party.

locality of the project as determined by the Secretary of Labor ...;

(d) the satisfaction of any loss, damage, expense, or claim which [Trustee] or [Centennial] may suffer or sustain through the failure of [Webb Construction] to fulfill the provisions of (a), (b), or (c) above or through the failure of [Webb Construction] to fulfill all obligations under said Construction Contract.

NOW THEREFORE, in consideration of the mutual promises and undertakings hereinafter contained, and for the purposes of inducing [HUD] to insure advances of mortgage money during the construction, the parties hereto on behalf of themselves, their successors or assigns respectively, undertake and agree that:

1. [Webb Construction] has deposited with [Centennial], or if [Centennial] so elects, with a depository satisfactory to [Centennial], a Completion Assurance Fund ... in the amount of $237,760.20 to secure or indemnify [Trustee] or [Centennial] in the performance of the Construction Contract....

* * *

5. This Agreement shall not alter or limit the obligations of [Webb Construction] under the Construction Contract, but shall be deemed to be merely additional security for the performance of [Webb Construction] of the obligations thereunder.

R. 55–56 (emphasis added).

 Although the instruments appear to be two separate contracts, they are so intertwined in that they reference and relate to one another, that we believe the Construction Contract and the Completion Assurance Agreement constitute one contract. When examining a contract it is viewed as a whole, not each item in isolation. *Riffle v. Knecht Excavating, Inc.,* 647 N.E.2d 334, 339 (Ind.Ct.App.1995), *trans. denied.* Moreover, so long as two or more instruments are part of the same transaction, different execution times will not prohibit instruments from being construed together. *McCae Mgmt. Corp. v. Merchants Nat'l Bank & Trust Co. of Indianapolis,* 553 N.E.2d 884, 887 (Ind.Ct. App.1990), *trans. denied.* Therefore, we will construe the Construction Contract and the Completion Assurance Agreement as one instrument (jointly referred to as "the Contract") for purposes of our third-party beneficiary analysis.

 We must now examine the Contract and the surrounding facts and circumstances to determine whether Blumenfeld was a third-party beneficiary to the Contract and thus, had standing to sue Centennial for recovery of the irrevocable letter of credit. *See Barth Elec. Co. v. Traylor Bros., Inc.,* 553 N.E.2d 504, 506 (Ind.Ct.App.1990). Generally, only those who are parties to a contract, or those in privity with a party, have the right to recover under the contract. *Gonzales v. Kil Nam Chun,* 465 N.E.2d 727, 729 (Ind. Ct.App.1984). However, those not a party to the contract may enforce the provisions of the contract by demonstrating that they are third-party beneficiaries to the contract. *Garco Indus. Equip. Co. v. Mallory,* 485 N.E.2d 652, 654 (Ind.Ct.App.1985), *trans. denied.* A third-party beneficiary contract is one in which the promisor has a legal interest in performance in favor of the third party and in which the performance of the terms of the contract between two parties must necessarily result in a direct benefit to a third party which was so intended by the parties. *In re Estate of Von Wendesse,* 618 N.E.2d 1332, 1337 (Ind.Ct.App.1993), *trans. denied.* A third party does not have the right to sue under a contract merely because he may derive an incidental benefit from the per-

formance of the promisor. *Harvey v. Lowry*, 204 Ind. 93, 183 N.E. 309, 311 (1932).

 In order to enforce a contract by virtue of being a third-party beneficiary, the third-party beneficiary must show:

(1) A clear intent by the actual parties to the contract to benefit the third party;

(2) A duty imposed on one of the contracting parties in favor of the third party; and

(3) Performance of the contract terms is necessary to render the third party a direct benefit intended by the parties to the contract.

*NN Investors Life Insurance Co. Inc. v. Crossley*, 580 N.E.2d 307, 309 (Ind.Ct.App. 1991), *trans. denied.* Among these three factors, the intent of the contracting parties to benefit the third-party is the controlling factor. *Barth Elec. Co.*, 553 N.E.2d at 506. Such an intention may be demonstrated by specifically naming the third-party, or by other evidence. *Id.* The intent necessary to the third-party's right to sue is not a desire or purpose to confer a particular benefit upon the third-party nor a desire to advance his interest or promote his welfare, but an intent that the promising party or parties shall assume a direct obligation to him. *Jackman Cigar Mfg. Co. v. John Berger & Son Co.*, 114 Ind.App. 437, 52 N.E.2d 363, 367 (1944).

We believe that Blumenfeld has satisfied the intent factor of the third-party beneficiary test after examining the terms of the Contract and the circumstances surrounding the formulation of the agreement. It is apparent from the record that Blumenfeld was involved in almost every aspect of the conversion and renovation of the Mel-

ton Road property into a residential care facility. Blumenfeld was a general partner of Miller Beach and had initially supplied $300,000.00 of his own funds for the project. He also was the president of the Residential Care Facility of Miller Beach Inc., the corporation directly managing the affairs of the facility once it opened its doors to the public. Blumenfeld also solicited others for funding of the residential care facility during the initial phase of the project. The loan from Centennial was essentially obtained to cover the costs of the construction project that exceeded the amount supplied by the partners of Miller Beach.

However, the construction project was unable to proceed past the planning and funding stage because the general contractor, Webb Construction, was unable to supply assurance funds as required by the Contract. This requirement is an explicit contractual obligation and could conceivably give rise to a breach of contract claim if not satisfied. Subsequently, Blumenfeld had extensive negotiations with Centennial regarding applying the irrevocable letter of credit on behalf of the construction company himself so that the project could proceed into the building phase. On January 12, 1990, Blumenfeld issued irrevocable letter of credit number 3030 in the amount of $237,760.00 to Centennial to satisfy Webb Construction's obligation under the Contract.[10] The letter of credit listed the applicant as Blumenfeld and the beneficiary as Centennial. It is clear that Blumenfeld did not gratuitously supply the assurance funds, he did so in order to protect his initial investment of $300,000.00 into the project as a partner of Miller Beach.

 We believe that the irrevocable letter of credit was not created in a vacu-

---

**10.** The initial general contractor, Interlock Service Corporation, was also unable to supply the irrevocable letter of credit and it ap-

pears from the record that Blumenfeld supplied the assurance funds on behalf of that construction company. *See* R. 445–46.

um. Because Blumenfeld supplied the assurance funds, he became a guarantor of Webb Construction's performance under the Contract. The nature and extent of a guarantor's liability depends on the terms of the contract. *Fortmeyer v. Summit Bank,* 565 N.E.2d 1118, 1121 (Ind.Ct.App. 1991). In addition, when the principal and obligee cause a material alteration of the underlying obligation without the consent of the guarantor, the guarantor is discharged from further liability. *Yin v. Society Nat'l Bank of Indiana,* 665 N.E.2d 58, 64 (Ind.Ct.App.1996), *trans. denied.* Thus, Blumenfeld's liability as a guarantor depended on the terms and conditions of the Contract. The irrevocable letter of credit was directly tied to the Contract.

We believe that irrevocable letter of credit was part and parcel of the Contract even though it was executed separately from the Contract. The Contract, which is a HUD prescribed form contract, specifically requires that the construction company supply the assurance funds. If the assurance funds were not provided, HUD would not have insured the mortgage issued by Centennial. *See* R. 864. It is true that Centennial and Blumenfeld were the only parties to the irrevocable letter of credit. However, Webb Construction, Centennial, and Miller Beach's approval of the entity and method of funding the assurance money was necessary since they were all parties to the Contract. If Webb Construction, Centennial, or Miller Beach contested Blumenfeld's decision to supply the assurance funds, Webb Construction conceivably would not have been allowed to proceed into the construction phase of the project because HUD would not have insured the mortgage. Thus, the parties' intent when the irrevocable letter was executed is crucial in determining whether Centennial, Webb Construction, and Miller Beach intended Blumenfeld to be a third-party beneficiary to the Contract.

The intent relevant in contract matters is not the parties' subjective intents but their outward manifestation of it. *Holloway v. Giganti, Inc.,* 540 N.E.2d 97, 99 (Ind.Ct.App.1989). The cardinal rule of contract interpretation is to ascertain the intention of the parties' from their expression of it. *Real Estate Support Servs., Inc. v. Nauman,* 644 N.E.2d 907, 910 (Ind. Ct.App.1994), *trans. denied.* A court does not examine the hidden intentions secreted in the heart of a person; rather it should examine the final expression found in conduct. *Id.* It is clear that Webb Construction, Centennial, and Miller Beach had knowledge of and assented to Blumenfeld's decision to become a guarantor of Webb Construction's performance under the Contract. Centennial and Webb Construction understood that if the construction company breached the contract, Centennial had the discretion to draw upon the irrevocable letter of credit. It follows that the parties to the Contract understood that if Webb Construction satisfied its contractual obligations, Blumenfeld would retain the full amount of the assurance funds. Certainly the owner of the residential care facility, Miller Beach, knew of Blumenfeld's decision to supply the assurance funds; he was a partner of Miller Beach. Thus, it is logical to assume that the parties to the Contract intended to directly benefit Blumenfeld by imposing a duty on Webb Construction in his favor. Thus, Blumenfeld has satisfied the intent factor of the third-party beneficiary test.

Moreover, it is clear that a duty was in fact imposed on Webb Construction in favor of Blumenfeld. Centennial, as the beneficiary of the irrevocable letter of credit, had the discretion to draw on the assurance funds in the event that Webb Construction breached the Contract. Thus, Webb Construction had a duty to

Blumenfeld to fulfill its contractual obligations under the Contract to prevent Centennial from drawing upon the irrevocable letter of credit.

Finally, proper performance of the Contract renders a direct benefit to Blumenfeld. As a guarantor of Webb Construction's performance, he will be able to retain the full amount of the irrevocable letter of credit he posted on behalf of the construction company. As a partner of Miller Beach, he will receive the benefit of the construction of the residential care facility and an eventual return on his investment of $300,000.00. Without Blumenfeld supplying the assurance funds, the project would have never proceeded past the planning and funding phase.

The surrounding circumstances and terms and conditions of the Contract support the conclusion that Blumenfeld was a third-party beneficiary to the Contract. Therefore, we hold that Blumenfeld is a third-party beneficiary to the Contract and thus, had standing to sue Centennial for recovery of the irrevocable letter of credit.

### III. Blumenfeld's Appeal

#### A. Jury Instructions

Blumenfeld first contends that the trial court erred in denying his Motion to Correct Errors because the trial court erred instructing the jury. We disagree.

#### 1. Standard of Review for Jury Instruction

 Blumenfeld is entitled to have the jury correctly instructed on an essential rule of law. *See Carson v. State,* 686 N.E.2d 864, 865 (Ind.Ct.App.1997), *trans. denied.* Jury instructions are within the sound discretion of the trial court and will only be reversed on a showing of abuse of that discretion. *Young v. State,* 696 N.E.2d 386, 389 (Ind.1998). The purpose of an instruction is to inform the jury of the law applicable to the facts without

misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict. *Fox v. State,* 497 N.E.2d 221, 225 (Ind.1986). Where the verdict would not have differed had the jury been properly instructed, any error in the giving of the instruction is harmless. *Canfield v. Sandock,* 563 N.E.2d 1279, 1282–83 (Ind.1990).

#### 2. Proposed Final Instruction No. 9(A)

 At the conclusion of the presentation of the evidence, Blumenfeld submitted Proposed Final Instruction No. 9(A), which provides that:

> The following interpretation of the contracts in evidence in this case must guide your deliberations. You are not free to substitute your own interpretations of the contract documents for those that are set forth.

> (1) The Contractor Webb Construction Company had no duty or obligation to pay its subcontractors or material men from its own personal funds. It was required to pay contractors and material men from the money it received from the project owner.

> (2) Contractor Webb's duty to complete the project "free and clear of any liens, claims, and encumbrances whatsoever" means the Contractor and not a third party must have caused the liens to have been placed on the project.

> (3) Assignment of a completion assurance letter of credit to HUD does not mean the letter of credit fund can be used for any purpose other than those contained in the completion assurance agreement. That is, it must be held subject to all the terms and conditions of the completion assurance agreement, that is, to cover the losses and damages to Centennial which Webb Construction Company directly caused.

You should disregard any testimony you may have heard during trial inconsistent with these contract interpretations.

R. 351. The trial court refused to tender this instruction to the jury.

Blumenfeld's Proposed Jury Instruction No. 9(A) revolves around the interpretation of portions of the Completion Assurance Agreement which provides in pertinent part that:

WHEREAS [Centennial] is unwilling to make advances of mortgage proceeds and [HUD] is unwilling to insure the Mortgage unless [Webb Construction] shall furnish proper assurance to [Trustee] and to [Centennial] for the performance of the obligations of [Webb Construction] under said Construction Contract including but not limited to:
* * *
(b) the completion of said project free and clear of any liens, claims or encumbrances whatsoever, except for the lien of the insured mortgage;
(c) the payment of all mechanics and laborers employed in the construction of the project at wages prevailing in the locality of the project as determined by the Secretary of Labor . . .;
(d) the satisfaction of any loss, damage, expense or claim which [Trustee] or [Centennial] may suffer or sustain through the failure of [Webb Construction] to fulfill the provisions of (a), (b), or (c) above or through the failure of [Webb Construction] to fulfill all the obligations under said Construction Contract.

R. 55. Centennial argues that this agreement explicitly states that it may draw upon the irrevocable letter of credit in every instance where mechanic's liens are filed against the Melton Road property. Blumenfeld argues that Centennial may not draw upon the irrevocable letter of credit where the imposition of mechanics' liens is a direct result of Miller Beach's failure to fully compensate Webb Construction which in turn, prevents the construction company from paying the subcontractors.

The record reveals that there were mechanics' liens [11] on the Melton Road property of more than $100,00.00. It is apparent that Centennial withdrew the full amount of the irrevocable letter of credit to satisfy these mechanics' liens. Blumenfeld presented evidence at trial that the mechanics' liens were a result of Miller Beach's failure to compensate the general contractor, Webb Construction, even though HUD had certified the project as substantially completed on April 30, 1990. *See* R. 844. The Construction Contract mandated that the project be completed by January 18, 1990. R. 859. Miller Beach clearly had a contractual duty to compensate Webb Construction. The Construction Contract provides in pertinent part that:

[Miller Beach] shall pay [Webb Construction] for the performance of the Contract. . . . Each month after the commencement of work hereunder, [Webb Construction] shall make a monthly request . . . for payment by [Miller Beach] for work done the preceding month. Each request for payment shall be filed at least 15 days before the date of payment is desired. Subject to the approval of [Centennial] and [HUD], [Webb Construction] shall be entitled to payment thereon in an amount equal to (1) the total value of classes of the work acceptably completed; plus (2) the value of materials and

---

11. A mechanic's lien secures a debt owing to, among others, a contractor for work performed and materials supplied to a property. Ind.Code § 32–8–3–1(a).

equipment not incorporated in the work, but delivered to and suitably stored at the site; plus (3) the value of components stored off-site....

R. 859. However, we do not believe that Miller Beach's failure to fully compensate Webb Construction entitles Blumenfeld to retain the full amount of the irrevocable letter of credit.

Blumenfeld for all intent and purposes is Miller Beach. Blumenfeld was a general partner of Miller Beach and the president of Residential Care Facility of Miller Beach Inc. Blumenfeld did not gratuitously provide the irrevocable letter of credit, rather he did so in order to protect his initial investment of $300,000.00 into the project. Without the assurance funds, the project would not have proceeded past the planning and funding phase. Thus, it would be inequitable to allow Blumenfeld to retain the full amount of the assurance funds when it was his failure to compensate Webb Construction which in turn resulted in the construction company being unable to pay the subcontractors.

Furthermore, the plain and unambiguous language of the Contract provides that Centennial may draw upon the irrevocable letter of credit when there are mechanics' liens levied upon the Melton Road property. The contractual language is broad and farreaching, the fault for the imposition of the liens should not be borne by Centennial in as much as the mechanics' liens were not the result of any malfeasance on the part of Centennial. If Centennial was denied the discretion to draw upon the irrevocable letter of credit the mortgage company would not reap its rightful benefit of the bargain under the Contract.

Therefore, we hold that Proposed Jury Instruction No. 9(A) is not a correct statement of the law and thus, the trial court did not abuse its discretion in refusing to tender this instruction to the jury.

### B. Inadequate Damage Award

Blumenfeld also contends that the trial court erred in denying his Motion to Correct Errors because the damage award was inadequate. We disagree.

### 1. Standard of Review of Damage Award

The appellate court employs a strict standard when reviewing a claim that an award of damages is inadequate, and we will neither reweigh the evidence, nor judge the credibility of the witnesses. *Manzo v. Estep*, 689 N.E.2d 474, 475 (Ind. Ct.App.1997). We consider only the evidence favorable to the award. *Id.* In addition, we must not substitute our idea of a proper award for that of the jury. *Prange v. Martin*, 629 N.E.2d 915, 922 (Ind.Ct. App.1994), *trans. denied.* Further, we will not reverse a damage award so long as the damages are within the scope of the evidence. *Burris v. Riester*, 506 N.E.2d 484, 485 (Ind.Ct.App.1987), *trans. denied.* A verdict will be reversed only upon a finding that, based upon the evidence, the amount of damages awarded indicate that the jury was motivated by prejudice, passion, partiality, corruption or consideration of some improper element. *Barrow v. Talbott*, 417 N.E.2d 917, 922 (Ind.Ct.App. 1981). We will not deem a verdict to be the result of improper considerations unless it cannot be explained on any other reasonable grounds. *Prange*, 629 N.E.2d at 922. Thus, even where the evidence is variable or conflicting as to the nature, extent and source of the injury, the jury is in the best position to determine the amount of damages, and we will not disturb the award. *Barrow*, 417 N.E.2d at 922.

## 2. Damage Award of $120,760.00

▮ Blumenfeld sued Centennial for the full amount of the irrevocable letter of credit, $237,760.20. The jury returned a verdict in favor of Blumenfeld in the amount of $120,760.00.[12] Blumenfeld essentially argued at trial that Centennial breached the Contract by drawing upon the full amount of the irrevocable letter of credit. The measure of damages in a breach of contract case is the loss actually suffered by the breach. *Colonial Discount Corp. v. Berkhardt*, 435 N.E.2d 65, 66 (Ind.Ct.App.1982). To recover the plaintiff must show that its damages flowed directly and naturally from the breach. *Id.* at 67. Although no particular degree of certainty is required in awarding damages, the award must be within the scope of the evidence. *Id.* Damages may not be awarded on guess or speculation but must be ascertainable with reasonable certainty. *Indiana & Michigan Elec. v. Terre Haute Indus.*, 507 N.E.2d 588, 601 (Ind.Ct.App.1987), *trans. denied.* The evidence is conflicting as to the total amount of the mechanics' liens imposed upon the Melton Road property, but it seems to be within the range of $115,000.00 to $117,000.00. We cannot state that the damage award was not within the scope of evidence before the trial court. Therefore, we may not reverse the jury's award of damages in favor of Blumenfeld.

### Conclusion

Based on the foregoing, we hold that Blumenfeld had standing to sue Centennial for the recovery of the irrevocable letter of credit because he was a third-party beneficiary to the Contract. In addition, we hold that the trial court properly refused to tender Proposed Final Instruction No. 9(A) to the jury and we affirm the amount of the damage award.

Affirmed.

DARDEN, and RILEY, JJ., concur.

---

12. We note that at the conclusion of the evidence, the jury asked the trial court the sole question of what was the total amount of the mechanics' liens. R. 824. The trial court informed the jury to "rely on your memories." R. 825.