**William A. BLOCHER, Jr., as Personal Representative of the Estate of William Blocher, Deceased, Appellant–Plaintiff,**

v.

**DeBARTOLO PROPERTIES MANAGEMENT, INC., Appellee–Defendant.**

No. 49A04–0102–CV–67.

Court of Appeals of Indiana.

Dec. 28, 2001.

---

William F. Conour, Ronald S. Todd, Conour & Doehrman, Indianapolis, IN, Robert Thopy, McNeely Stephenson Thopy & Harrold, Shelbyville, IN, Attorneys for Appellant.

Philip Linnemeier, Carmel, IN, Attorney for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE [1]

Appellant Plaintiff, William A. Blocher, Jr., (Blocher), as Personal Representative of the Estate of William Blocher (Bill), deceased, appeals a jury verdict in favor of Appellee Defendant, DeBartolo Properties Management, Inc. (DeBartolo).

We affirm.

1. Appellant's request for oral argument is hereby denied.

## ISSUES

Blocher raises five issues on appeal, which we restate as:

1. Whether the trial court erred in admitting testimony about Occupational Safety and Health Act (OSHA) citations received by Blocher's employer, the Henry C. Smither Roofing Co., Inc. (Smither).

2. Whether the trial court erred in failing to instruct the jury that if the jury found that DeBartolo assumed the duty to enforce safety at the construction site, then DeBartolo was vicariously liable for any safety violations committed by its subcontractor, Smither.

3. Whether the trial court erred in failing to instruct the jury that if it found DeBartolo and Smither had a common duty to abide by OSHA at the construction site, then they were jointly liable for the breach of the common duty.

4. Whether the trial court's comparative fault instruction was proper under the facts and legal theory of the case.

5. Whether the trial court erred by failing to treat Smither and DeBartolo as one entity on the verdict form.

## FACTS AND PROCEDURAL HISTORY

DeBartolo, a construction management company, was hired as the general contractor to renovate the Richmond Square Mall in Richmond, Indiana. As general contractor, DeBartolo's sole role was to manage the construction activities performed entirely by subcontractors it hired. One of those subcontractors, Smither, was hired to install, among other things, a dozen or so skylights in the mall's roof. The installation was performed according to the terms of a purchase agreement (Agreement). Article Thirteen of the Agreement stated, in part:

> The Subcontractor hereby agrees to comply with all Federal, State and local laws, orders, rules and regulations relative to equal opportunity and affirmative action in the employment of workers, including, without limitation, all Executive Orders and rules and regulations of the U.S. Secretary of Labor. All work performed under this Agreement shall be in strict compliance with Local, State and Federal Occupational Safety and Health Standards, Rules and Regulations and Orders; and Subcontractor shall assume all liability for fines and penalties assessed by the authorities against the Subcontractor or Contractor as these fines and penalties related to the work performed by the Subcontractor for infractions of these safety and health standards, rules, regulations and orders.

(Appellant's Appendix, Section 4, p. 2).[2]

To install the skylights, it was necessary for Smither to cut openings into the pre-existing mall roof. As the general contractor, DeBartolo specifically retained, in its contracts with subcontractors, jurisdiction over roof penetration. According to James Sebastian, Vice President of Construction Personnel for DeBartolo, this was standard procedure because the owner of a shopping center always purchased a maintenance bond that could be nullified if the roofing work was not done properly.

Steve Southgate (Southgate), a roofing superintendent for Smither, testified that on September 2, 1998, the job at the mall got rained out. The next morning, at around 7:00 a.m., Bill, a long-time employee of Smither, showed up at the company's office and asked Southgate if he could

---

**2.** Appellant's Appendix fails to comply with Ind.Appellate Rule 51(C) which requires that "[a]ll pages of the Appendix shall be numbered at the bottom consecutively"; thus, we are limited to citing the Appendix by Exhibit number.

work a few daytime hours at another site, to make up for the lost wages caused by the previous day's rain, in addition to his regular shift that night at the mall. Southgate told him he could work a few hours, maybe three or four, but then he had to go home because of his evening assignment. Contrary to Southgate's instruction, however, Bill worked a full daytime shift before reporting for work at the mall that evening. Southgate testified that no one was ever allowed to work two shifts in one day because "[i]t's safety and it's ... you don't have the stamina to work two shifts." (R. 647).

On the night of September 3, 1997, a crew from Smither, including Bill, was working on the roof of the mall in an area where they were installing a four-plex skylight.[3] Boyd Butcher, Smither's foreman for this job, testified that four or five halogen twin lights had been set up around the perimeter of the work area. There were six men on the roof that night, including Bill, who was working with another roofer cutting two-by-six wooden beams on sawhorses near where a third roofer was cutting a hole in the roof deck with a gasoline-powered saw. Sometime shortly before midnight, the third roofer left the roof penetration unattended while he went to refill his gas saw. While he was gone, and for reasons unknown, Bill turned away from his sawing activities, walked over to where the opening was being cut, and fell through to the mall floor sixteen feet below. Bill died as a result of the injuries he suffered from his fall.

The next day, Floyd Howard (Howard), an OSHA inspector, investigated Smither's work site at the mall, after which he issued Smither several citations for safety violations. Howard testified that he issued the

OSHA violations to Smither, not DeBartolo, because he had not been presented with any facts tending to demonstrate that DeBartolo was a controlling employer for purposes of OSHA.

A jury trial was held January 9–12, 2001. At the conclusion of the evidence, the matter was submitted to the jury, which returned a verdict in favor of DeBartolo and against Blocher. Blocher now appeals. Additional facts are provided as necessary.

## DISCUSSION AND DECISION
### I.  Admission of testimony regarding OSHA violations

■■■  The standard of review for admissibility of evidence is abuse of discretion. *Butler ex rel. Estate of Butler v. Kokomo Rehabilitation Hosp., Inc.*, 744 N.E.2d 1041, 1046 (Ind.Ct.App.2001). The trial court abuses its discretion only when its action is clearly erroneous and against the logic and effect of the facts and circumstances before the court. *Id.* Even when the trial court erred in its ruling on the admissibility of evidence, this court will reverse only if the error is inconsistent with substantial justice. *Id.* "In determining whether an evidentiary ruling has affected an appellant's substantial rights, we assess the probable impact of the evidence on the jury." *City of Indianapolis v. Taylor*, 707 N.E.2d 1047, 1055 (Ind.Ct.App. 1999). Improperly admitted hearsay does not merit reversal where "it is merely cumulative of other evidence admitted." *Id.*

■■  Blocher contends that the trial court erred when it admitted into evidence, over Blocher's objection, testimony elicited on cross-examination of Blocher's expert

---

**3.**  The skylights were being installed at night at the request of the mall owner because the mall remained open during the renovations, so due to safety considerations, roof penetrations were done after the mall closed for the evening.

witness that Smither, not DeBartolo, received citations from OSHA. The testimony and objection were as follows:

Q. [DEBARTOLO'S COUNSEL]: And following Mr. Blocher's death, did a gentleman come out and make an inspection.

A. [WITNESS]: Yes.

Q. And were violations for OSHA found?

A. Yes.

[BLOCHER'S COUNSEL]: Your Honor, I am going to pose an objection right now that whatever IOSHA inspector found should come through his lips. I understand Mr. Linnemeier is going to have him here tomorrow. And we can talk to him about it. Second of all, it's up to the jury here to determine the violations and to determine who is accountable for those violations. So he usurps the power of the jury. Furthermore to ask this witness, there's no foundation. It's hearsay.

[THE COURT]: At this point, I am going to overrule the objection.

\* \* \*

Q. [DEBARTOLO'S COUNSEL]: Now, who did the inspector find attributable to those violations?

A. [WITNESS]: The inspector doesn't use the word 'attributable', what he did is he recommended citations to the area director to Smithers.

Q. Okay. And to only Smither's correct?

A. That's correct.

(R. 330–32).

Blocher argues that evidence of OSHA citations is inadmissible, citing *Hagerman Construction, Inc. v. Copeland*, 697 N.E.2d 948, 955 (Ind.Ct.App.1998) ("the IOSHA worksheets and safety orders are not admissible pursuant to Evid.R. 803(8)(d).").[4] Such testimony, Blocher reasons, improperly plants in the jury's mind an inference that DeBartolo was not negligent because it did not receive an OSHA citation, while Smither did. "The trial court allowed DeBartolo to usurp the jury's role in this case by substituting the accusations of an administrative agency." (Appellant's Brief at 17).

We need not decide, however, whether testimonial evidence of OSHA violations or citations is impermissible testimony under Evid.R. 803(8)(d) because, later in the trial, Blocher elicited virtually the same testimony on cross-examination of Howard, the OSHA inspector who investigated the accident scene the day after Bill's death. The following exchange took place between Blocher's counsel and Howard:

Q. Could you tell the jury what the controlling employer is?

A. The controlling employer to me means the fellow that has control of the employee and his working conditions around him.

Q. And very frequently the controlling employer can also be a general contractor?

A. He could be.

Q. And if the general contractor has a right to control over enforce [sic] OSHA on a construction site, he would be a controlling employer, wouldn't he?

A. Yes.

\* \* \*

Q. Because the skylights ended ... did you discover in your investigation whether any personal fall arrest or covers or guardrails were around any of the

---

4. The actual citations were never offered into evidence.

cut areas or openings at the time Bill Blocher fell?

A. I think the correct answer is I found none.

\* \* \*

■ Q. So you found with regard to that, you found a violation of that as well?

A. Yes, I did.

Q. Now, a controlling employer can be cited under OSHA for the same violations that a sub-contractor can, can it not?

A. Yes. Without going into a lot of discussion, I think the answer is yes.

Q. But it's your discretion whether or not you choose to do that?

A. I take a little exception with the word 'discretion.' We look at the general, overall situation. Who is really in control. What produced the hazard and who is responsible for it. Those things enter into our judgment of who would be responsible.

Q. Do you recall if in your investigation anyone from DeBartolo told you that they were responsible for enforcing OSHA at this construction site?

A. Have no reason to say that I recall that. No.

Q. Had somebody told you that from DeBartolo, that we were the ones supposed to enforce safety at this construction site, would you have cited them for those OSHA violations?

A. Yes.

(R. 659–661). This testimony not only provides the jury with the same information,

it states it more explicitly.[5] "It is well settled that error in admitting evidence at the trial is not available on appeal where the complaining party submits evidence to substantially the same effect." *Hagerman,* 697 N.E.2d at 954.

Moreover, as DeBartolo points out, Blocher's case proceeded, in large part, on the theory of vicarious liability under which DeBartolo would be held liable for the negligence of its subcontractor, Smither. *See, e.g., Perry v. Northern Indiana Public Service Co.,* 433 N.E.2d 44 (Ind.Ct. App.1982). Such theory necessarily requires evidence of culpability on the part of the subcontractor. Thus, we fail to see how, even if admitted in error, such evidence does any harm to Blocher's substantial rights. *Estate of Butler,* 744 N.E.2d at 1046.

*II. Jury Instructions*

■ Instructions serve to inform the jury of the law applicable to the facts presented at trial, enabling it to comprehend the case sufficiently to arrive at a just and correct verdict. *Centennial Mortgage, Inc. v. Blumenfeld* 745 N.E.2d 268, 278 (Ind.Ct.App.2001). Jury instructions are committed to the sound discretion of the trial court. *Id.* In evaluating the propriety of a given instruction, we consider 1) whether the instruction correctly states the law, 2) whether there is evidence in the record supporting the instruction, and 3) whether the substance of the instruction is covered by other instructions. *Elmer Buchta Trucking, Inc. v. Stanley,* 744 N.E.2d 939, 944 (Ind.:2001). An erroneous instruction warrants reversal only if it could have formed the basis

---

**5.** In his reply brief, Blocher attempts to distinguish between testimony of OSHA violations as observed by an OSHA inspector, which Blocher states is admissible, and OSHA citations, which Blocher labels as impermissible factual findings invading the province of

the jury. However, in his own questions to the OSHA inspector on cross-examination, Blocher asks about citations as well as violations, thereby negating any potential distinction between the two.

for the jury's verdict. *Canfield v. Sandock,* 563 N.E.2d 1279, 1282 (Ind.1990) ("We will assume that the erroneous instruction influenced the jury's verdict unless it appears from the evidence that the verdict could not have differed even with a proper instruction.").

### A. Instruction No. 10

In Indiana, a principal is not liable for the negligence of an independent contractor unless one or more of five recognized exceptions apply to the facts presented. *Bagley v. Insight Communications Co., L.P.,* 658 N.E.2d 584, 586 (Ind. 1995). These exceptions are:

(1) where the contract requires the performance of intrinsically dangerous work; (2) where the principal is by law or contract charged with performing the specific duty; (3) where the act will create a nuisance; (4) where the act to be performed will probably cause injury to others unless due precaution is taken; and (5) where the act to be performed is illegal.

*Id.* Blocher's case against DeBartolo proceeded under the second exception: by virtue of the contract between Smither and DeBartolo, the latter had assumed the duty for workplace safety at the mall, including the subcontractors' compliance with OSHA regulations. To that end, Blocher submitted the following proposed jury instruction.

### Duty—Assumption by Contract or Conduct:

I instruct you that in a construction site negligence case like this one, a legal duty may arise by law, by contract, or by the conduct of a party. This assumption of a duty creates a special relationship between the parties and a corresponding duty to act in a reasonable and prudent manner. When a duty is assumed by a party, it may delegate the performance of the work to a subcontractor, but it can never delegate the responsibility or legal liability for the work. This duty is a nondelegable duty and the party is not relieved of any of its obligations by entering into a subcontract agreement with another contractor. When a general contractor has assumed a duty then it is also liable for the fault of its subcontractors.

If you find that the Defendant [DeBartolo], by law, by contract, or by the conduct of its employees, assumed the duty to enforce safety at the Richmond Mall construction project, then it had the duty to exercise reasonable care and its failure to do so would be negligent. *Furthermore, under such circumstances, [DeBartolo] would be accountable for the safety violations of its subcontractors, including [Smither].* You should consider such negligence in allocating fault to the Defendant [DeBartolo].

(Appellant's Appendix, § 5, Final Instruction No. 10)(emphasis added). The trial court omitted the next to the last sentence over the following objection by Blocher:

By deleting the second sentence of the second paragraph. It did not provide for vicarious liability upon a finding that Smither's Roofing was negligent and that the defendant had assumed a duty. It told the jury that while the Defendant could be accountable it did not say that it was also accountable for any negligence of Smither's roofing. Since vicarious liability is an automatic finding upon assumption of a duty, the jury should have been instructed to the affect of the finding of the assumed duty . . .

(R. 705–06). According to Blocher, by deleting that one sentence, the trial court eliminated his theory of vicarious liability. We disagree. Even without the omitted sentence, the instruction still informs the

jury that when a general contractor assumes a nondelegable duty, it is liable for the fault of its subcontractors. The omitted sentence merely restated this generality in a more particularized way and, thus, was merely cumulative. Hence, no error resulted from the removal of this redundancy. *Elmer Buchta Trucking, Inc.*, 744 N.E.2d 939.

### B. Plaintiff's Tendered Instruction No. 6

■ Blocher cites as additional error the trial court's refusal to give its proposed Instruction No. 6., which stated:

(Persons Under a Common Duty)

It is the law in the State of Indiana that when a contractor and a subcontractor are under a common duty and the failure of each of them to perform the common duty results in injury to another person, then each of the contractors is responsible for the entire harm resulting from the failure to perform the duty.

In this case, if you find that the Defendant [DeBartolo] and its subcontractor, [Smither], had a common duty to Bill Blocher to enforce safety at the Richmond Mall construction project, then the Defendant [DeBartolo] may be liable for the entire damages suffered by the Estate of Bill Blocher resulting from any failure to perform the duty by it and by its subcontractor, [Smither].

(Appellant's Brief at 35). In his objection to the trial court, Blocher stated:

The facts of this case show that both DeBartolo and Smither had a common duty to abide by OSHA under the law and having a common duty one could not be liable without the other being liable. So the verdict would be consistent with the law of the State of Indiana. Plaintiff's Tendered Number Six is a correct statement of the law. It was applicable to the facts and was not covered by other instructions.

(R. 704).

On appeal, Blocher cites *Peru Heating Co. v. Lenhart*, 48 Ind.App. 319, 95 N.E. 680 (1911) for the proposition that when several persons are jointly bound to perform a duty, then they are jointly and severally liable for omitting to perform, or for performing the duty negligently. DeBartolo counters that the substance of the common duty instruction was adequately covered by the language of Instruction No. 10 and adds nothing to Blocher's vicarious liability theory. We agree. Instruction No. 10 states, in part: "When a general contractor has assumed a duty then it is also liable for the fault of its subcontractors." This language, while using different words, conveys the same concept, *i.e.* that DeBartolo would also be liable for Blocher's damages resulting from Smither's failure to perform its duty to enforce safety.

And while we could split grammatical hairs, we find such exercise unnecessary in light of our other conclusion that the evidence does not warrant the giving of a common-duty instruction. We find nothing in Blocher's extensive citations from the record supporting its theory that DeBartolo assumed, either by contract or conduct, liability for Bill's safety at the construction site. Our review of the record thus leaves us firmly convinced that the jury verdict was proper in light of the facts presented. Therefore, the trial court's refusal to give the common duty instruction was not an abuse of its discretion.

### C. Blocher's Tendered Instruction No. 7

■ Blocher objects also to the trial court's refusal to give the following tendered instruction.

(Comparative Fault of Bill Blocher)

The simple fact that [Bill] fell to his death does not mean that he was at fault or was negligent in any manner or incurred any risk. Before Bill may be found guilty of any comparative negligence or fault, [DeBartolo] must prove by a preponderance of the evidence, that Bill failed to do something an ordinary reasonable construction roofer would have done in the same circumstances or that Bill did something an ordinary reasonable construction roofer would not have done in the same circumstances. Furthermore, an employee such as Bill does not incur any risk for an injury which occurs from a risk encountered in the course of his employment when he must encounter that risk in the normal performance of his required job duties and responsibilities. *I further instruct you, as a matter of law, that an employee like Bill does not assume any risk of injury if [DeBartolo] or [Smither] violated safety standards or statutes in causing Bill's death.*

If you conclude that Bill did not act unreasonably or that he merely encountered the risk of injury from falling in the normal performance of his duties as a roofer, *or that his employer or [De-Bartolo] violated a safety regulation or law in causing Bill's death, then he was not negligent and no comparative fault should be assigned to him.*

(Appellant's Brief at 38)(emphasis added). In objecting to the trial court's refusal to give this instruction, Blocher argued:

It's the law of the State of Indiana that contributory negligence or the comparative fault of a plaintiff cannot be considered. If the defendant has violated safety statute or a safety regulation. Now if the fault of Plaintiff can only be considered if it's willful and wanton. Pursuant to the *Saunders* decision ...

the court held that the act which was sought to be avoided by the duty of the Defendant cannot be raised as a comparative fault issue. Therefore the failure to give this instruction allowed the jury to consider the fault of the Plaintiff for stepping into the hole or the weakened deck which was the very item which should have been avoided by the duty. It was not covered by other instructions. (R. 704–705).

Blocher supports his objection with *Sauders v. County of Steuben*, 693 N.E.2d 16 (Ind.1998), wherein our supreme court cited *Myers v. County of Lake, Indiana*, 30 F.3d 847, 853 (7th Cir.1994) for the proposition that "a duty to prevent someone from acting in a particular way logically cannot be defeated by the very action sought to be avoided." *Id.* at 19. *Sauders* was an action by the estate of a jail inmate who committed suicide while in the custody of a county sheriff. There, our supreme court held that it was error for the trial court to give instructions on contributory negligence and incurred risk. We do not find *Sauders* to be sufficiently analogous, however, for the reason that it proceeded under the Indiana Tort Claims Act, Ind.Code § 34–13–3–1 *et seq.*, and Ind. Code § 34–51–2–2 specifically precludes a comparative fault analysis in such cases. *Sauders*, 693 N.E.2d at 17.

Blocher asserts, "[n]umerous jurisdictions specifically have held that the violation of OSHA standards by a defendant deprives it of the defense of contributory negligence and incurred risk." (Appellant's Brief at 40). While Blocher cites numerous cases from other jurisdictions to support his claim, we do not find such authority persuasive. To the contrary, we find that our supreme court's decision in *Hebel v. Conrail, Inc.*, 475 N.E.2d 652, 655 (Ind.1985) compels us to the opposite conclusion. *Hebel* was an action under the

Federal Employer's Liability Act (FELA) brought by a railroad policeman who complained of injuries resulting from the inhalation of vapors from a train derailment site that he had been assigned to guard. *Id.* at 654. On appeal, Hebel argued that evidence of OSHA violations by Conrail was admissible to prove negligence *per se. Id.* at 656. In rejecting Hebel's argument, the court stated:

> The decision herein, upon this issue, is controlled by the following quoted provision of [OSHA] under which the regulation allegedly violated was adopted:

> "Nothing in this chapter shall be construed to supersede or in any manner affect any workmen's compensation law or to enlarge or diminish or affect in any other manner the common law or statutory rights, duties, or liabilities of employers and employees under any law with respect to injuries, diseases, or death of employees arising out of, or in the course of, employment." 29 U.S.C. § 653(b)(4).

> The legislative history accompanying OSHA also reflects the proscriptions set forth above.

> "The bill does not affect any Federal or state workmen's compensation laws, or the rights, duties, or liabilities of employers and employees under them. . . ." (1970 U.S.Code Cong. and Adm.News, 5177, 5199).

*Id.* at 656–57 (emphasis omitted). In deciding that such language prohibited the conversion of an OSHA standard into strict liability, the *Hebel* court cited favorably to *Wendland v. Ridgefield Const. Services, Inc.,* 184 Conn. 173, 439 A.2d 954, 956–957, which reasoned as follows:

> A negligence *per se* instruction transforms the character of the factfinder's inquiry. The applicable standard of care is affected by such an instruction. Because the standard of care is the key

factor in determining liability, we conclude that the application of a negligence *per se* instruction affects common law rights, duties and liabilities of employers and employees with respect to injuries of employees arising out of and in the course of employment as those terms are used in 29 U.S.C. § 653(b)(4) and General Statutes § 31–369(b). Thus, the negligence *per se* instruction was erroneous.

*Id.* While *Hebel* was decided within the context of a FELA action, we find its rationale equally applicable to the present action.

■ On appeal, Blocher also cites to Indiana Pattern Jury Instruction No. 5.45 as additional authority for his requested negligence *per se* instruction. We note, however, that Blocher made no mention of this pattern instruction in his objection to the trial court. Thus, it has been waived. *See Southport Little League v. Vaughan,* 734 N.E.2d 261, 273 (Ind.Ct.App.2000) ("A party claiming error in the giving of an instruction is limited to his stated objection at trial.").

### III. Verdict Form

■ Finally, Blocher argues that the trial court erred by failing to treat Smither and DeBartolo as one entity for fault allocation on the verdict form, because that "would not indicate to the jury that in vicarious liability that DeBartolo would be vicariously liable for Smithers and that all that fault should be lumped together in one allocation against the defendant." (R. 706). As authority, DeBartolo cites Ind. Code § 34–51–2–4, which states: "For purposes of sections 6 through 10 of this chapter, a defendant may be treated along with another defendant as a single party where recovery is sought against that defendant not based upon the defendant's own alleged act or omission but upon the

defendant's relationship to the other defendant." The flaw in Blocher's logic, however, is that Ind.Code § 34–6–2–88 states: " 'Nonparty' for purposes of IC 34–51–2, means a person who caused or contributed to cause the alleged injury, death, or damage to property *but who has not been joined in the action as a defendant.*" *Id.* (emphasis added). By definition, then, a nonparty cannot be treated as one with a named defendant. Therefore, Smither's exclusion from the verdict form was proper.

## CONCLUSION

For all of the foregoing reasons, we find no reversible error and, thus, affirm the jury verdict in this cause.

Affirmed.

SHARPNACK, C.J., and NAJAM, J., concur.